**Steven Donald STOW, Petitioner–Appellee,**

v.

**Albert MURASHIGE, Respondent–Appellant.**

**No. 03–17036.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 2004.

Filed Nov. 19, 2004.

Davelynn M. Tengan and Simone C. Polak, Department of the Prosecuting Attorney, Maui, HI, for the respondent-appellant.

Peter C. Wolff, Jr., Federal Public Defender, Honolulu, HI, for the petitioner-appellee.

Before FERNANDEZ, PAEZ, and RAWLINSON, Circuit Judges.

PAEZ, Circuit Judge.

Steven Donald Stow's petition for habeas relief presents a novel factual situation concerning the application of the Double Jeopardy Clause of the Fifth Amendment. After being tried in Hawaii state court for attempted murder arising out of Stow's alleged separate machete attacks of two homeless men over disputes involving alcohol, the jury returned a verdict of guilty on the charge of attempted first degree murder. The jury also returned "Not Guilty" verdicts on the two counts of attempted second degree murder. The trial court entered judgment on the guilty verdict and sentenced Stow accordingly. Neither the court nor counsel questioned the propriety of the jury's not guilty verdicts on the charges of attempted second degree murder; however, the record does not reflect whether counsel or the court were aware that the jury had written "Not Guilty" on the verdict form next to those two counts before the court entered judgment.

On direct appeal, the Hawaii Supreme Court reversed the jury's judgment of conviction of attempted first degree murder. The court, however, held that the not guilty verdicts on the two counts of attempted murder did not, in substance, constitute acquittals and therefore the State could retry Stow for attempted second degree murder without subjecting him to double jeopardy. Following remand by the Hawaii Supreme Court, but before the retrial began, Stow, pursuant to 28 U.S.C. § 2254, sought federal habeas relief on the ground that a retrial on the charges of attempted second degree murder would violate his Fifth Amendment right against double jeopardy. The district court granted Stow's petition and the State appealed.

■ Preliminarily, we hold that Stow's habeas petition is properly considered under 28 U.S.C. § 2241, not § 2254, because at the time Stow filed his petition he was not "in custody pursuant to the judgment of a State court." Thus, to obtain habeas relief, Stow need only show that a retrial would violate his right against double jeopardy. We need not consider whether the Hawaii Supreme Court's decision was "contrary to, or involved an unreasonable

application of, clearly established Federal law." § 2254(d)(1).

We further hold that the jury's "Not Guilty" verdicts create a double jeopardy bar to Stow's impending retrial on the charges of attempted second degree murder. To do otherwise, and allow an appellate court over six years later to speculate whether the jury really meant to acquit when it wrote "Not Guilty," would create an unwarranted exception to the "fundamental" and "absolute" rule of double jeopardy that a jury's verdict of acquittal is final—an exception that would inevitably undermine the rule's "absolute" nature. *See Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("[W]e necessarily afford absolute finality to a jury's *verdict* of acquittal.") (emphasis in original). Accordingly, we affirm.

## I.

### BACKGROUND

Stow was indicted in Hawaii state court on charges stemming from Stow's machete attacks on Douglas Parkinson and Samuel Nash. Stow allegedly attacked Parkinson because Parkinson would not share his beer. The machete attack resulted in permanent injuries to Parkinson's head, face and wrist from numerous machete blows. The next day, Stow allegedly attacked Nash because Stow gave Nash nine dollars to purchase liquor, but when Nash returned from the store he would not share any of the alcohol he had purchased. Nash sustained lacerations to his face,

head and leg as a result of the machete attack.

The State charged Stow with attempted murder in the first degree, in violation of Hawaii Revised Statute ("HRS") §§ 705–500 (criminal attempt) and 707–701(1)(a) (murder in the first degree) (Count One). Section 707–701 defines murder in the first degree as intentionally or knowingly causing the death of "[m]ore than one person in the same or separate incidents." The same indictment charged Stow with two separate counts of attempted murder in the second degree, based on the same two incidents. Count Three of the indictment charged Stow with the attempted murder of Samuel Nash on April 17, 1996. Count Five of the indictment charged Stow with the attempted murder of Douglas Parkinson on April 18, 1996.[1] Section 707–701.5 defines murder in the second degree as intentionally or knowingly causing the death of another person.

At the end of the trial, the judge instructed the jury that Stow was charged with more than one offense:

The defendant is charged with more than one offense under separate counts in the complaint. Each count and the evidence that applies to that count is to be considered separately. The fact that you may find the defendant not guilty *or guilty* of one of the counts charged does not mean that you must reach the same verdict with respect to any other count charged.

The judge proceeded to define the offense of attempted murder in the first degree.[2] The judge then instructed the jury that:

---

1. Count Two of the indictment charged Stow with attempted robbery in the first degree in violation of HRS §§ 705–500 and 708–840. The trial court dismissed this count for insufficient evidence at the close of the State's case. Count Four charged Stow with terroristic threatening in the first degree, in violation of HRS §§ 707–716(1)(d). The prosecu-

tor dismissed this charge during trial as the main witness to the alleged threats testified while intoxicated.

2. According to the Hawaii Supreme Court, the attempted first degree murder instruction was erroneous because it did not "adequately apprise the jurors of the requisite state of

If you find the defendant not guilty in count one of the offense of attempted murder in the first degree, or if you're unable to reach a unanimous verdict as to this offense, then you must consider whether the defendant is guilty or not guilty in counts three and five of the offense of attempted murder in the second degree.

Contrary to Hawaii law,[3] the judge did not instruct the jury to stop deliberating if it found Stow guilty of Count One.[4] The judge proceeded to instruct the jury on the elements of attempted second degree murder. Finally, the judge admonished the jury that its "verdict must represent the considered judgment of each juror, and in order to return a verdict, it is necessary that each juror agrees thereto."

On October 26, 1998, the jury returned its verdict. On the verdict form, the jury foreperson wrote "Guilty" next to Count One, attempted murder in the first degree. In accordance with the trial court's instructions and the verdict form, having found Stow guilty of attempted first degree murder, the jury answered Special Interrogatory # 1 in the affirmative—that the prosecution had proven beyond a reasonable doubt that Stow was not under the influence of extreme mental or emotional disturbance at the time he committed the crime.

The jury foreperson also wrote "Not Guilty" next to Counts Three and Five, the two counts of attempted second degree murder. The jury foreperson signed and dated the verdict form. There were no other markings on the verdict form.[5]

When the trial court received the jury's verdict it only announced the verdict on Count One. The court polled each juror, and each juror responded that the verdict represented his own individual verdict. The court's final judgment and commitment order only reflected the jury's verdict on Count One. There is no evidence in the record that the trial court was aware of the jury's "Not Guilty" verdicts on the two counts of attempted second degree murder.

On direct review, the Hawaii Intermediate Court of Appeals affirmed Stow's conviction. Ultimately the Hawaii Supreme Court reversed the guilty verdict on the charge of attempted first degree murder for insufficiency of the evidence.[6] *Stow*, slip op. at 28–29.

mind for the offense." Contrary to Hawaii law, the instruction failed to make clear to the jury that it was required to find that the defendant "acted pursuant to a continuing course of conduct or a common scheme or plan." *State v. Stow*, No. 23138, slip. op. at 33 n. 19 (Haw. Feb. 21, 2002). In other words, to obtain a conviction the State had to prove that when Stow attacked Nash on April 17 he also intended, at that time, to murder Parkinson as "part of a continuing course of conduct." *Id.* at 28.

3. *See State v. Cullen*, 86 Hawai'i 1, 946 P.2d 955, 965–66 (1997).

4. The prosecutor in his closing argument, however, did state to the jury: "You will not find the man guilty of all three charges. . . . If you find that this defendant [is] guilty of the offense of[attempted] murder in the first degree, you don't even look any farther. That's it. That's your whole job." The prosecutor later stated: "remember you don't look at attempted murder in the second degree unless you decide that the defendant is not guilty of attempted murder in the first degree."

5. Although the jury instructions and the verdict form instructed the jury to consider the offense of assault in the first degree if it returned a "Not Guilty" verdict on either count of attempted second degree murder, the rest of the verdict form was blank.

6. This holding created a double jeopardy bar to retrying Stow on the attempted first degree murder charge. *See Burks*, 437 U.S. at 15–18, 98 S.Ct. 2141.

The Hawaii Supreme Court held that the jury's not guilty verdicts did not constitute a double jeopardy bar to a retrial of the two counts of attempted murder in the second degree, and remanded for a new trial on those counts. *Id.* at 34. Citing *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), the court explained that "[a] verdict of acquittal represents the factfinder's conclusion that the evidence does not warrant a finding of guilty." *Stow,* slip op. at 31. The court further explained that "an acquittal must actually, in both substance and form, acquit the defendant of the charged offense." *Id.* at 32. The court held that although the "Not Guilty" verdicts constituted an acquittal "in form," they did not constitute an acquittal "in substance." *Id.* The court, however, never questioned that the "Not Guilty" verdicts did not, in fact, constitute verdicts under Hawaii law.[7]

Prior to his pending retrial on the two counts of attempted second degree murder, Stow filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Hawaii. The magistrate judge, in his proposed Findings and Recommendations, recommended that the petition be granted. *See Stow v. Murashige,* No. Civ. 02–00766 SOM–KSC, 2003 WL 22383021, *8 (D.Haw.2003). The district court, without considering whether § 2254 was the proper jurisdictional basis for Stow's habeas petition, granted the petition and ordered Stow released from state custody, ruling that the Hawaii Supreme Court's decision was both "contrary to" and an "unreasonable application of" clear-

ly established federal law, warranting relief under both 28 U.S.C. §§ 2254(d)(1) and (2). *Stow v. Murashige,* 288 F.Supp.2d 1122 (D.Haw.2003).

## II.

### STANDARD OF REVIEW

We review *de novo* a district court's decision to grant a habeas petition pursuant to 28 U.S.C. § 2254. *See Alcala v. Woodford,* 334 F.3d 862, 868 (9th Cir.2003). We also review *de novo* a district court's decision to grant a habeas petition pursuant to 28 U.S.C. § 2241. *See Hunter v. Ayers,* 336 F.3d 1007, 1011 (9th Cir.2003).

## III.

### DISCUSSION

A. *The Proper Jurisdictional Basis for Stow's Habeas Petition Was 28 U.S.C. § 2241, Not 28 U.S.C. § 2254.*

■ We first address the proper jurisdictional statute for Stow's habeas petition. Stow filed his habeas petition invoking jurisdiction pursuant to 28 U.S.C. § 2254. Without considering whether § 2254 was the proper jurisdictional statute, both the magistrate and district judge analyzed the merits of Stow's petition under § 2254. However, because Stow was not "in custody pursuant to the judgment of a State court" at the time he filed his petition, the threshold requirement for § 2254, we join four of our sister circuits in holding that Stow's habeas petition which raised a double jeopardy challenge to his pending retrial is properly treated under § 2241. As a result, in reviewing Stow's petition we do

---

7. Nor does the State argue in this appeal that the verdicts did not comply with the requirements of Hawaii law and are therefore procedurally flawed. Under Hawaii Rule of Penal Procedure 31(a), the requirements for a properly returned verdict are: "The verdict shall

be unanimous, unless otherwise stipulated to by the parties. It shall be returned by the jury to the judge in open court." The verdicts on the counts of attempted second degree murder fulfilled these requirements.

not apply the heightened standards imposed by the Antiterrorism and Effective Death Penalty Act of 1996 [8] contained in 28 U.S.C. § 2254.

■ Section 2254 confers jurisdiction on a district court to issue "a writ of habeas corpus in behalf of a person *in custody pursuant to the judgment of a State court* ... on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). "By contrast, the general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment—for example, a defendant in pre-trial detention or awaiting extradition." *White v. Lambert,* 370 F.3d 1002, 1006 (9th Cir.2004). We have held that "[i]n these situations, not covered by the limitations in § 2254, the general grant of habeas authority provided by the Constitution and § 2241 will provide jurisdiction for state prisoners' habeas claims." *Id.* (citations omitted).

■ Although Stow was charged with multiple counts, at the conclusion of the trial he was convicted only of attempted first degree murder. As noted, however, the Hawaii Supreme Court reversed his conviction for insufficient evidence and remanded the case for further proceedings. *Stow,* slip op. at 28–29. As a result of the Hawaii Supreme Court's decision, Stow's judgment of conviction was vacated and Stow was no longer in custody pursuant to a state court judgment. Although Stow remained in custody after the court reversed his conviction, his status was that of a pretrial detainee—he was in custody pending his retrial on the counts of attempted second degree murder. As the State acknowledged in supplemental briefing, after the Hawaii Supreme Court reversed Stow's conviction for attempted first degree murder, there was no longer a judgment of conviction on any count.

In explaining the difference between § 2241 and § 2254 we previously have suggested that a pretrial double jeopardy challenge is properly brought under § 2241. In *McNeely v. Blanas,* we held that a habeas petitioner attacking his pretrial detention should have sought relief under § 2241, not § 2254. 336 F.3d 822, 824 n. 1 (9th Cir.2003). In so holding, *McNeely* cited the Seventh Circuit's decision in *Jacobs v. McCaughtry,* 251 F.3d 596 (7th Cir.2001) (per curiam). In *Jacobs,* the Seventh Circuit held that § 2241 was the proper statute for the petitioner's pretrial double jeopardy challenge. *Id.* at 597. The Seventh Circuit held that the district court erred in dismissing Jacobs' petition as successive because at the time he filed his original federal habeas petition he was awaiting retrial on state charges for which he had been acquitted and thus his "first petition [was] properly classified as a § 2241 petition because it was filed pretrial and not while he was 'in custody pursuant to judgment of a state court.'" *Id.* (citations omitted).[9]

---

8. Pub.L. No. 104–132, Title I, § 104, 110 Stat. 1218.

9. The First, Fifth and Eighth Circuits similarly have held that § 2241 is the proper statutory basis for a pretrial double jeopardy challenge. In advance of a pending retrial, the First Circuit noted the following in holding that the petitioner's double jeopardy challenge was properly brought under § 2241: "Section 2254 which requires exhaustion, applies only to petitions filed after the state has rendered a judgment and hence affords neither a source of power nor a definition of exhaustion applicable to this case." *Benson v. Superior Court,* 663 F.2d 355, 358 (1st Cir. 1981). *See also Stringer v. Williams,* 161 F.3d 259, 261–62 (5th Cir.1998) (Stringer's habeas petition alleging a double jeopardy violation "is seeking release from the pending state criminal proceedings against him. Therefore, we should construe Stringer's filing as a ha-

■ The text of § 2254 also supports this conclusion. Under § 2254, "custody" must be "pursuant to the judgment of a State court." Only the jury (or judge sitting as a trier of fact) has the initial authority to render a determination of guilt, which is the predicate for a judgment of conviction and sentence. Although an appellate court may affirm, modify or reverse a judgment of conviction, it lacks the authority to impose a judgment of conviction in the first instance.[10]

In the Supreme Court's recent decision in *Price v. Vincent*, 538 U.S. 634, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003), there is broad language that at first blush seems to suggest that § 2254, not § 2241, is the proper jurisdictional basis for Stow's habeas petition. In *Price*, the Court stated:

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court

beas petition with § 2241 as the jurisdictional basis."); *Palmer v. Clarke*, 961 F.2d 771, 772 (8th Cir.1992) (allowing a habeas petition alleging a double jeopardy violation to proceed under § 2241 without analysis).

10. Hawaii Rule of Penal Procedure 32(a) makes clear it is only the trial court that may impose a judgment of conviction. The rule states: "After adjudication of guilt, sentence shall be imposed without unreasonable delay.... Before suspending or imposing sentence, the court shall address the defendant personally and afford a fair opportunity to the defendant and defendant's counsel, if any, to make a statement and present any information in mitigation of punishment." Similarly, while Hawaii Rule of Penal Procedure 23 allows for trial by either a jury or the trial court, there is no mention of the appellate court.

11. In *Price*, the jury found Price guilty. *Id.* at 637, 123 S.Ct. 1848. The state appellate court reversed, finding that the trial court's tentative ruling that there was insufficient evidence created a double jeopardy bar despite the judge's final decision to uphold the verdict. *Id.* The Michigan Supreme Court, however, found that the judge's tentative ruling

unless he meets the requirements of 28 U.S.C. § 2254(d). The double jeopardy claim in respondent's habeas petition arises out of the same set of facts upon which he based his direct appeal, and the State Supreme Court's holding that no double jeopardy violation occurred therefore constituted an adjudication of this claim on the merits.

*Id.* at 638, 123 S.Ct. 1848. There is a crucial distinction, however, between *Price* and Stow's case: in *Price*, the last state court decision reinstated the jury's original guilty verdict;[11] in Stow's case, rather than reinstating the jury's guilty verdict, the Hawaii Supreme Court reversed it on the ground that it was not supported by sufficient evidence.

Here, unlike in *Price*, we are not presented with a situation where the state appellate court has upheld a jury's verdict of guilty on any count.[12] After the Hawaii

was not an "acquittal" and thus double jeopardy did not attach. *Id.* at 637–38, 123 S.Ct. 1848. As a consequence, at the time Price filed his federal habeas petition, the highest state court had reinstated the jury's original guilty verdict and he was in custody pursuant to that verdict.

12. Our decision in *Santamaria v. Horsley*, 133 F.3d 1242 (9th Cir.1998) (en banc) is procedurally similar to *Price*. In *Santamaria*, the jury found Santamaria guilty of robbery and murder and the state appellate court reversed the murder conviction holding that an eleven-day continuance during jury deliberations was prejudicial error. *Id.* at 1244. Pending retrial, Santamaria filed a motion contending that collateral estoppel precluded the prosecution from relying on a theory that involved the use of a knife to commit the murder. The trial court granted the motion, and when the prosecution announced it could not continue, dismissed the case. The state appellate court affirmed the dismissal. The California Supreme Court reversed, however, and held that collateral estoppel did not apply and remanded to the trial court with instructions to reinstate the charges. *Id.* Thus, although Santamaria's murder conviction had been vacated,

Supreme Court's decision, Stow had yet to be lawfully convicted of any of the charged offenses. Chief Justice Rehnquist, the author of *Price,* some 30 years earlier noted that without a jury verdict of guilty (or a finding of guilt by the court) § 2254 would not be the appropriate statute for habeas relief. In his dissent in *Braden v. 30th Judicial Circuit Court,* then Justice Rehnquist noted:

> Petitioner filed this petition alleging federal jurisdiction pursuant to 28 U.S.C. §§ 2241, 2254. *Section 2254 pertains only to a prisoner in custody pursuant to a judgment of conviction of a state court* ... The issue here is whether habeas corpus is warranted under § 2241(c)(3); that section empowers district courts to issue the writ, inter alia, before a judgment is rendered in a criminal proceeding.

410 U.S. 484, 503, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (Rehnquist, J., dissenting) (emphasis added). Thus, as there was no valid judgment of conviction in place when Stow filed his federal habeas petition, § 2241 is the proper jurisdictional statute.

The significance of this determination is that Stow is not required to satisfy the demanding standards of AEDPA embodied in § 2254 to obtain habeas relief. That is, we can affirm the district court's judgment by concluding *de novo* that subjecting Stow to a retrial on the attempted second degree murder charges would violate his Fifth Amendment right against double jeopardy. We need not further consider, as the district court did, whether the Hawaii Supreme Court's decision was "con-

trary to" or an "unreasonable application of" clearly established Federal law. *See* § 2254(d)(1). We turn to the merits of Stow's double jeopardy argument.

### B. The Double Jeopardy Clause Bars Stow's Impending Retrial.

■ "[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when not followed by any judgment, is a bar to a subsequent prosecution for the same offence." *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (citation and internal quotation marks omitted). This is true "even though an acquittal may appear to be erroneous." *Id.* That a jury's verdict of acquittal bars a subsequent retrial on those same offenses is "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence." *Martin Linen,* 430 U.S. at 571, 97 S.Ct. 1349. "This rule is assumed to be fundamental because it is the most 'absolute' [and] operates without exception." Peter Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich. L.Rev. 1001, 1004 (1979). This "fundamental" and "absolute" rule applies here to the jury's "Not Guilty" verdicts on the two counts of attempted second degree murder.[13]

■ As implicitly recognized by the Hawaii Supreme Court's decision, what makes Stow's case unique is the intuition that the jury mistakenly acquitted Stow of the second degree murder charges. However, now over six years later all that is left of the jury's intent is the "Not Guilty"

---

at the time he filed his habeas petition, he was nonetheless in custody because of his robbery conviction.

**13.** As Westen has noted, "unlike other constitutional provisions, the double jeopardy clause is a triptych of three separate values:

(1) the integrity of jury verdicts of not guilty, (2) the lawful administration of prescribed sentences, and (3) the interest in repose." Westen, *supra,* at 1002. It is the integrity of the jury's verdict that is at issue here.

verdict. "Having been acquitted by [the trier of fact], the defendants can never be tried again for the same offense. And that principle holds irrespective of whether the prohibited second trial would be held anew in the district court or by this Court on the record created below." *United States v. Lynch*, 162 F.3d 732, 740 (2d Cir.1998) (Sack, J., concurring).

The State advances two interlinked arguments why double jeopardy should not bar a retrial, each of which ultimately fails.[14] First, the State argues that an appellate court can examine a jury's verdict to determine if it reflected an acquittal in both "form" and "substance." However, this both misunderstands the Supreme Court's decision in *Martin Linen* and makes an unwarranted extension of a rule that allows examination of the double jeopardy effect of a *judge's* decision to dismiss charges to a *jury's* "not guilty" verdict. Second, the State argues that because the "not guilty" verdicts were the result of the trial court's instructional error it should not be given force and effect. The Supreme Court, however, has explicitly held that jury acquittals, even when based on instructional error, still create a double jeopardy bar.

The State primarily relies on the Hawaii Supreme Court's determination that, pursuant to *Martin Linen*, an appellate court can inquire into whether a jury's "not guilty" verdict represented an acquittal in

both "form" and "substance." We reject this argument.

In *Martin Linen*, the Court was presented with the question of whether the government could appeal the trial court's dismissal of an indictment, or whether the appeal was barred by the Double Jeopardy Clause. 430 U.S. at 566–67, 97 S.Ct. 1349. The answer turned on whether the judge's dismissal of the case constituted an "acquittal." The Court stated that "we must determine whether *the ruling of the judge*, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* at 571, 97 S.Ct. 1349 (emphasis added). In examining the judge's order dismissing the case, the Court explained that "[t]here can be no question that the judgments of acquittal entered here by the District Court were 'acquittals' in substance as well as form" because the judge found the prosecution had failed to present sufficient evidence to meet its burden. *Id.* at 571–72, 97 S.Ct. 1349.

The State's reliance on the "form" versus "substance" distinction takes out of context *Martin Linen's* discussion of the relevant appellate court inquiry into a *judge's* order terminating a case in favor of the defendant. We have found no case, other than the Hawaii Supreme Court decision in *Stow*, that has applied this test to a *jury's* "not guilty" verdict.[15] To do so would divorce the test from its rationale—

---

**14.** In the district court, the State advanced a third argument. Relying on our decision in *United States v. Stauffer*, 922 F.2d 508 (9th Cir.1990), the State argued that the Hawaii Supreme Court's decision was tantamount to correction of a clerical error by the jury and therefore double jeopardy did not bar Stow's retrial. The State properly abandoned this argument as *Stauffer* involved the trial court's correction of a clerical mistake on the verdict form, based on the unanimous agreement of the jurors that the signed verdict form did not reflect their true verdict. *See id.* at 510. As

the State implicitly acknowledges, this case does not authorize an appellate court, six years later, to speculate that the jury did not intend to find the defendant "Not Guilty."

**15.** That *Martin Linen's* test only applies to a judge's dismissal order is reinforced by the government's concession in *Martin Linen* that "a verdict of acquittal formally returned by the jury should absolutely bar further proceedings." *Id.* at 572, 97 S.Ct. 1349.

*i.e.,* to determine if the trial court terminated the case for insufficiency of the evidence or for a matter unrelated to the merits, like pre-indictment delay.

■ More importantly, extending *Martin Linen's* inquiry to a jury's verdict undermines the principle of precluding appellate courts from scrutinizing jury verdicts to determine whether in fact the jury intended to find the defendant "not guilty." The application of the *Martin Linen* test to allow an appellate court to examine whether a jury's verdict, whether "not guilty" or "guilty," has *actually* resolved all of the factual elements would invite appellate courts to determine whether, in their view, the verdict is correct. While a judge may terminate a prosecution for a variety of procedural reasons, a jury simply has two. Both the verdict of "guilty" and "not guilty" by definition represent a factual resolution of the charged offense.[16] Allowing an appellate court to look behind a jury's verdict conflicts with the rule that appellate courts should not scrutinize jury verdicts. "That the[inconsistent] verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by ... inquiry into such matters." *Dunn v. United States,* 284 U.S. 390, 394, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

■ That there cannot be further appellate inquiry into a jury's verdict is confirmed by the doctrine that even "egregiously erroneous" jury verdicts are nonetheless a bar to a subsequent prosecution. *See Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (per curiam). The Supreme Court has recognized that even "egregiously erroneous" jury verdicts are entitled to double jeopardy effect; a clear acknowledgment that juries sometimes get it wrong: *i.e.,* resolve the factual elements in a way that the reviewing court would not have. *See also* Westen, *supra,* at 1011 ("An erroneous acquittal, by definition, is a verdict which is tainted to a material degree by some defect in the fact-finding process ... an erroneous jury acquittal says nothing about ... what an error-free process would have revealed.").[17]

The State also relies, to some extent, on the Hawaii Supreme Court's holding that the erroneous jury instructions undermined the double jeopardy effect of the jury's not guilty verdicts. The Hawaii Supreme Court held that the trial court's instructional error which had the effect of equating the mens rea for first and second degree attempted murder led to "juror error" in returning "not guilty" verdicts on Counts Three and Five. *Stow,* slip op. at 33 ("[W]e do not believe that the jury was so misguided as to believe that it could find Stow guilty of attempted murder in the first degree, as well as two counts of attempted murder in the second degree."). The court further reasoned that because of

---

**16.** In examining the difference between the double jeopardy effect of a reversal of a conviction and a jury acquittal one leading treatise has noted: "only in the latter situation is there concrete evidence, in the form of a not guilty verdict, that the jury may have resolved the factual issues in favor of the defendant's innocence." LaFave, Israel & King, *Criminal Procedure* § 25.3(b) (2d ed.1999).

**17.** Although the State does not raise this argument, the jury's verdict of acquittal, even if not formally entered into the written judgment, still creates a double jeopardy bar. *See Green,* 355 U.S. at 188, 78 S.Ct. 221 ("a verdict of acquittal is final, ending a defendant's jeopardy, *and even when not followed by any judgment* ") (emphasis added). The rationale for this rule is that a judge should not be able to subvert the Double Jeopardy Clause by failing or refusing to enter formally a jury's verdict of acquittal into the record.

this combination of trial court instructional error and "juror error" it was clear that the jury had not resolved all of the factual elements in favor of acquittal on Counts Three and Five because the jury had resolved those precise elements the opposite way on Count One. This part of the Hawaii Supreme Court's analysis relying on the instructional error to reach its conclusion conflicts with several other firmly established principles of double jeopardy law.

■ Ultimately any instructional error, even if it led to the jury's verdict of "not guilty," is irrelevant for double jeopardy purposes. The Supreme Court has clearly held that a jury's verdict of acquittal—even if "based upon an egregiously erroneous foundation"—nonetheless creates a double jeopardy bar. *Fong Foo*, 369 U.S. at 143, 82 S.Ct. 671. This principle has been consistently reaffirmed by the Court. *See, e.g., Burks*, 437 U.S. at 16, 98 S.Ct. 2141 ("[W]e necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision. . . ."); *Green*, 355 U.S. at 188, 78 S.Ct. 221 ("[I]t is one of the elemental principles of our criminal law that the Government cannot secure a new trial by means of an appeal even though an acquittal may appear to be erroneous."); *Sanabria v. United States*,

437 U.S. 54, 68–69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) ("[W]e believe the ruling below is properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count. . . .").

■ This is true even when, as here, the jury's acquittal was supposedly based on an error of law. *See Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) ("Reliance on an error of law, however, does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. . . . Thus, this Court's cases hold that an acquittal on the merits bars retrial even if based on legal error.").[18]

In sum, even if the jury did return "Not Guilty" verdicts because of an error of law by the trial court, even this potentially "egregiously erroneous" acquittal still raises a double jeopardy bar to a subsequent retrial.

Finally, to the extent that the State argues that the jury could not have resolved all of the factual elements on the second degree murder counts because it already had resolved them the opposite

---

18. Indeed, the Supreme Court has held that an acquittal based on an erroneous understanding of the requisite *mens rea* nonetheless raises a double jeopardy bar to a subsequent retrial. *See Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986). In *Smalis*, the trial court, in a bench trial, granted the defendant's demurrer at the close of the prosecution's case on the ground that the prosecution failed to present sufficient evidence to meet its burden of persuasion. *Id.* at 141, 106 S.Ct. 1745. The main issue the Court addressed was whether the demurrer constituted an acquittal. In holding that double jeopardy precluded a retrial, the Court explained: "The status of the trial court's judgment as an acquittal is not affected by the Commonwealth's allegation that the court

'erred in deciding what degree of recklessness was . . . required to be shown under Pennsylvania's definition of [third-degree] murder. . . .' [T]he fact that the 'acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles' . . . affects the accuracy of that determination but it does not alter its essential character.'" *Id.* at 144, n. 7, 106 S.Ct. 1745 (citations omitted). In other words, even if the trial court (as the trier of fact) was mistaken as to the elements of the charges (mens rea), the acquittal nonetheless precluded a retrial. *See also Lynch*, 162 F.3d at 735 ("It does not matter that this factual finding was arrived at under the influence of an erroneous view of the law.").

way on the first degree murder count, this argument reduces to an assertion that the verdicts were inconsistent. The Supreme Court has held, however, that inconsistent jury verdicts nonetheless create a double jeopardy bar to subsequent retrial. "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause." *United States v. Powell,* 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted).

## IV.

### CONCLUSION

We hold that Stow's habeas petition is properly considered under 28 U.S.C. § 2241, not § 2254. Because Stow's impending retrial on the charges of attempted second degree murder would violate double jeopardy, the district court's judgment granting Stow's habeas petition is AFFIRMED.