John Sydney **COOK**, Jr., Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 23604.

United States Court of Appeals
Fifth Circuit.

June 29, 1967.

George S. Wright, Tuscaloosa, Ala., L. Drew Redden, Rogers, Howard, Redden & Mills, Birmingham, Ala., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., Ben Hardeman, U. S. Atty., J. O. Sentell, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before GEWIN and AINSWORTH, Circuit Judges, and LYNNE, District Judge.

AINSWORTH, Circuit Judge:

Appellant, an Alabama attorney, was convicted on three counts of wilfully

understating his total receipts, less allowances, rebates and returns from the practice of law on Schedule C of each of his personal income tax returns for the years 1959, 1960 and 1961, in violation of 26 U.S.C. § 7206(1). He was sentenced to a term of imprisonment of eighteen months and to pay a fine of $5,000 plus cost of prosecution. He has appealed and assigns numerous errors in connection with the trial of his case.

The principal question to be resolved is whether the verdict of the jury, which contained the request that the court give the defendant every degree of leniency possible, was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict. Also involved is the question whether it was error for the court to fail to ask a defense-requested, voir dire question to prospective jurors whether they were acquainted with or related to an important named Government witness.

The district court initially charged the jury that " * * * in the event that there is a verdict of guilty in the case, it is the Judge's duty to determine what the appropriate punishment is in the case; and the law does not impose that duty and responsibility upon jurors in a case such as this."

The trial judge also charged the jury as to the possible verdicts it might return in the case. He said:

"Any verdict that you render in this case must be a unanimous verdict, a verdict returned to court that reflects the consensus of the twelve jurors to whom this case will be submitted. If, after you consider all of the evidence in this case, after you make an application of this law to the evidence, you believe that the United States has failed to sustain its burden of proof, as I have outlined and defined that burden of proof to you, as to any of the charges, then let one of your number sign a verdict and return it to court reflecting that 'We the jury find the defendant not guilty.' On the other hand, if you believe that the United

States has sustained its burden of proof as to one or more of these charges, then let one of your number sign a verdict and return it to court finding 'We the jury find the defendant guilty as charged in counts'— whichever ones you so find him guilty of. One of your number sign that as foreman."

In the face of these instructions by the court, the jury returned a verdict in the following form:

"We, the Jury, find the defendant John Sydney Cook, Jr. guilty as charged in counts numbered Count 1, 2, & 3 of the Indictment.*

"This the 1st day of April, 1966.
 "s/ Carl W. Ethridge
 Foreman

"*This Jury, however, respectfully request that this court give to J. Sydney Cook, Jr. every degree of leniency possible.
 "s/ Carl W. Ethridge
 Foreman"

When the verdict was read the court immediately responded to the jury as follows:

"All right, that verdict will be accepted and filed in the case. As to your statement, the Court does not sentence in any of these cases until the probation officers have prepared and presented to me a complete presentence probation report. We have had a probation officer sitting here all week for the purpose of staying familiar with the case. I haven't studied the report; the law doesn't permit a Judge to study a report before a defendant is found guilty. And there is a good reason for that; that is so the Judge won't have any preconceived ideas and notions as to the guilt or innocence of the defendant; and that is the reason why we have to keep the guilt separated from any punishment that may be imposed in the case. I will, prior to the time I impose sentence in this case, study thoroughly the presentence report that the probation officer has prepared. I will give the defendant and the defendant's

lawyers and any members of his family or friends that want to come in to discuss with me the matter of sentence an opportunity to do so before any sentence is imposed. Your interest in the matter is appreciated. * * * Do not discuss your verdict with anyone. The verdict the jury returned in this case is a verdict of the jury, and it was arrived at while all twelve of you were deliberating, and you shouldn't be questioned concerning it and shouldn't discuss it."

Thereupon counsel for defendant requested the jury be polled.[1] The first juror responded to the question, "Guilty or not guilty?" by stating, "I was reluctant to at the beginning; I voted guilty." The next juror said, "Guilty, sir." The third juror stated, "Guilty, based on the note at the bottom." The remaining jurors responded, all substantially in the following language, "Guilty, as noted at the bottom of the verdict." Counsel for defendant then requested, out of the jury's presence,[2] that the court inquire of each juror whether their guilty vote was qualified by the addition of the note on the bottom of the verdict which was the request for every degree of leniency possible. But the court declined to make such inquiry, or to further pursue the matter, declaring that the jury had found the guilt of the defendant without any qualification. Defense counsel then requested the court to inquire of the jury whether their votes would be for conviction if they were advised they could not make the recommendation or that the recommendation was not a subject for their consideration. The court declined again.[3]

---

1. The poll is set forth in the record as follows:
"THE COURT:
All right, the lawyer asked for a poll, and they have a right to do so. As your name is called, if you will, you state for me your vote in the case. Ben Hitch; guilty or not guilty?
"JUROR BEN HITCH:
I was reluctant to at the beginning; I voted guilty.
"THE COURT:
Carl Ethridge?
"JUROR CARL ETHRIDGE:
Guilty, sir.
"THE COURT:
T. S. Kimbrough?
"JUROR T. S. KIMBROUGH:
Guilty, based on the note at the bottom.
"THE COURT:
N. L. Johnson?
"JUROR N. L. JOHNSON:
Guilty, as noted at the bottom of the verdict.
"THE COURT:
All right; R. E. Butte?
"JUROR R. E. BUTTE:
Guilty, as noted on the bottom.
"THE COURT:
Lewis Dunn?
"JUROR LEWIS DUNN:
Guilty, as noted on the bottom.
"THE COURT:
John G. Scherf, Jr.?
"JUROR JOHN G. SCHERF, JR.:
Guilty, as noted on the note at the bottom.
"THE COURT:
Mrs. Nellie Boulware?

"JUROR MRS. NELLIE BOULWARE:
Guilty, as the note on the bottom.
"THE COURT:
James A. Delbridge, II?
"JUROR JAMES A. DELBRIDGE, II:
Guilty; guilty, as the note on the bottom.
"THE COURT:
Blake Lane?
"JUROR BLAKE LANE:
Guilty, as the note on the bottom.
"THE COURT:
Milton Sharp?
"JUROR MILTON SHARP:
Guilty, as the note on the bottom.
"THE COURT:
Is there any whose name I did not call?
"JUROR MISS FLORA CARROLL:
Mine.
"THE COURT:
Excuse me.
"THE CLERK:
Flora Carroll.
"THE COURT:
Yes, I am sorry; Flora Carroll?
"JUROR MISS FLORA CARROLL:
Guilty, as noted."

2. The court had excused the jury which had left the courtroom when the trial judge said, "Is there any other questions [sic] you want me to ask the jury about this verdict? Hold the jury."

3. The colloquy between court and counsel follows:
"MR. REDDEN:
If it please the court, we request that the court inquire of the jurors, separate-

We hold that the court committed reversible error when it denied the defendant's request that these inquiries be made of the jury.

It is true that the district judge originally informed the jury in his charge that it was his duty, not the jury's, to assess the punishment in the case of a verdict of guilty. Upon receipt of the verdict the court stated that it was his policy in such cases not to sentence until he had been presented with a complete presentence probation report by the probation officers; that the probation officer had been in attendance throughout the trial; and that thorough study would be made of the presentence report which the probation officer prepared and the defendant, his lawyers, members of his family and friends would have a full opportunity to discuss the sentence with the judge before it is imposed.

Despite this statement of the court's policy and in the face of the original instruction as to punishment and as to the possible verdicts, the poll of the jurors showed one voted guilty though he was "reluctant to at the beginning," another unqualifiedly voted guilty, another voted guilty, "based on the note at the bottom," and nine voted guilty, each of these stating substantially "as noted at the bottom of the verdict." Under the circumstances, we are left with serious doubt that the jury did not qualify its verdict of guilty by predicating and conditioning it on the request for "every degree of leniency possible."

When the court declined to inquire of each member of the jury whether their verdict was qualified, he said that there were cases which support his denial; that he "doesn't have to pay any attention to the request" for leniency. It is the general rule that if the jury, without statutory authority, makes a recommendation for clemency, it does not invalidate the verdict and may be disregarded by the court in imposing sentence. Krull v. United States, 5 Cir., 1957, 240 F.2d 122; Thlinket Packing Co. v. United States, 9 Cir., 1916, 236 F. 109; 23A C.J.S. Criminal Law § 1407, p. 1100. The circumstances here, however, are exceptional. Without more, the jury's request for extreme leniency should be treated as surplusage. But where the circumstances strongly suggest that there would have been no agreement as to the verdict unless the recommendation of leniency was also accepted, the effect of the recommendation, steadfastly adhered to on the poll, was to nullify the verdict. 23A C.J.S. Criminal Law § 1407, pp. 1102–1103. There is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination. 23A C.J.S. Criminal Law § 1393, pp. 1054–1055. Cf. Garrett v. State, 159 Tex.Cr.R. 203, 1953, 262 S.W. 2d 414.

In the present case the district court had an opportunity to remove the cloud from the verdict by making the requested inquiry whether the verdict was qualified by the addition of the note

---

ly and severally, whether their guilty vote or the guilty vote of any one of them is qualified by the addition of the note on the bottom of the verdict, to which each one of them referred when polled.
"THE COURT:
I decline to do that. The verdict— the verdict is not ambiguous, it speaks for itself; it says, 'We find him guilty on count one, count two, and count three,' and on down there they say, 'We request the court to be lenient'; so the court—and there are cases along this line—doesn't have to pay any attention to the request. The only thing that was submitted to the jury was the question of guilt or innocence, and they found that

without any qualification. I decline to do that. Anything else?
"MR. REDDEN:
We request the court to inquire of the jury whether their separate and several votes would be for conviction if they were advised that they could not make this recommendation, or that this recommendation was not a subject for their consideration.
"THE COURT:
I advised them when I charged them that the punishment was up to the Judge. They were advised to that effect before they found the verdict of guilty. I decline to do that."

on the bottom of the verdict (i. e., the request for "every degree of leniency possible"). At this point the circumstances were highly unusual. It was imperatively necessary that the court then and there determine the jury's intent because the verdict was not in any of the precise forms submitted to it under the court's instructions, and especially because in the subsequent poll of the jury by the court most of the jurors reaffirmed that their verdict of guilty was "based on the note at the bottom" or "as noted at the bottom of the verdict." Despite the court's remarks to the jury on receipt of their verdict, it was apparent that the jurors were standing firmly in their determination that "every degree of leniency possible" should be accorded the accused. One juror—and one would be enough to destroy the unanimity required for a verdict—went so far as to state when polled that his verdict was "Guilty, *based on the note at the bottom.*"[4] (Emphasis supplied.) But the district court declined the request. Defense counsel then requested that the court inquire of the jury "whether their separate and several votes would be for conviction if they were advised that they could not make this recommendation, or that this recommendation was not a subject for their consideration," which request was also denied by the court, though he undoubtedly had the power to determine the grounds or principle on which the verdict was based. See 53 Am. Jur. § 1067, p. 739; Bernhardt v. United States, 9 Cir., 1948, 169 F.2d 983, cert. denied 335 U.S. 903, 69 S.Ct. 407, 93 L. Ed. 437 and 335 U.S. 903, 69 S.Ct. 408, 93 L.Ed. 437. The form of the jury's verdict and the subsequent responses of the several jurors to the poll should have raised sufficient doubt in the court's mind to require the requested inquiry of each juror, or another poll of the jury, or a direction that they reconsider their verdict until this serious uncertainty had been removed and the intent of the jury clearly understood. Again the trial judge declined the request of the accused made by his counsel. We hold that the jury's verdict, taken together with the court's comments to the jury on receipt of the verdict and the responses of each juror to the court's poll, showed an obscurity— a lack of definite and precise meaning— and that obscurity having rendered the verdict doubtful and not having been clarified by the trial court as requested by the defendant when there was opportunity to do so was fatal to it. See Williams v. State, 1950, 92 Okl.Cr. 70, 220 P.2d 836; Smith v. State, 1898, 75 Miss. 542, 29 So. 260, at 265, 266. Cf. United States v. Mankowski, E.D.Wis., 1960, 179 F.Supp. 667.

 We also believe the trial court should have asked the question on voir dire examination of prospective jurors whether any member of the panel was acquainted with or related to Jack F. Chamblee, an Internal Revenue agent of the Federal Internal Revenue Service. The record shows that Mr. Chamblee was one of the Government's principal witnesses and there are 111 pages of the record devoted to his testimony. The court conducted the voir dire examination of jurors, as it had a right to do, under Fed.R. Crim.P., Rule 24(a), but declined to ask the question about Mr. Chamblee, emphasizing that his omission was intentional and that the question was not overlooked. The defendant had a right to have the question answered to afford him an opportunity to exercise his peremptory challenges intelligently. The question was submitted in writing to the court by defendant in advance of the voir dire examination and the information requested was reasonably necessary to enable the accused to exercise his peremptory challenges. See Bailey v. United States, 5 Cir., 1931, 53 F.2d 982. Though the court has broad discretion in conducting the voir dire examination, the question relating to the witness Chamblee

---

4. "Based" is defined: "to place or establish on a base or basis; ground; found; establish." See The Random House Dictionary of the English Language, 1966 ed.

was pertinent to the inquiry and it was error for the court not to ask it of the prospective jurors.

Reversed and remanded for a new trial.