**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD W. HOYLE,
        *Petitioner-Appellant,*

v.

ADA COUNTY, IDAHO, DISTRICT
COURT; LAWRENCE WASDEN,
Attorney General, State of Idaho,
        *Respondents-Appellees.*

No. 06-35509

D.C. No.
CV-05-00063-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
March 6, 2007—Portland, Oregon

Filed August 2, 2007

Before: Ronald M. Gould, Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Andrew Parnes, Ketchum, Idaho, for petitioner-appellant Richard W. Hoyle.

Jessica M. Lorello, Deputy Attorney General, Boise, Idaho, for respondents-appellees Ada County and the State of Idaho.

---

**OPINION**

GOULD, Circuit Judge:

Petitioner-Appellant Richard W. Hoyle was indicted in Idaho on state racketeering charges. By the time the case was submitted to the jury, two counts remained in addition to thirty alleged predicate acts for a third count involving a racketeering charge ("Count B"). After the jury told the trial judge that it could not agree on a number of predicate acts in Count B, the trial judge instructed the jury to note on a special verdict form where there was no agreement. The jury returned a not guilty verdict on the racketeering counts, but wrote "no agmt" next to seven predicate acts and wrote under the "not guilty" verdict, "except as to the seven predicate acts upon which we could not reach unanimous agreement." The trial court denied Hoyle's motion for acquittal, concluding that the jury qualified its verdict with respect to the seven excepted predicate acts in Count B, a ruling which the Court of Appeals of Idaho and the Idaho Supreme Court affirmed. Hoyle filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3), claiming that the not guilty verdict served to acquit him of the entirety of Count B and that Respondent Ada County ("the State") was barred by the prohibition against double jeopardy from charging in a second prosecution that Hoyle committed five of the seven predicate acts as discrete and independent offenses. The district court denied relief because it found that the jury unambiguously excepted

the seven predicate acts from its not guilty verdict. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

Hoyle owned and operated Hoyle & Associates Insurance, Inc. ("Hoyle Insurance") in Boise, Idaho from 1979 to 1995. On January 1, 1996, Hoyle sold Hoyle Insurance to First Security Insurance, which continued to operate the concern as Hoyle Insurance and employed Hoyle as Vice President and Sales Manager.

On June 12, 1997, Hoyle was indicted on eight felony counts that were predicated on 165 criminal acts allegedly committed in connection with his insurance company. When the case was submitted to the jury, the jury had left to consider just Count A alleging solicitation of destruction of evidence, Count E alleging solicitation of grand theft, and thirty alleged predicate acts under Count B for various racketeering conduct.[1] On June 11, 1999, after ten weeks of trial and three days of deliberation, the jury reached verdicts of not guilty on Counts A and E. With respect to the remaining Count B, the jury sent a note to the trial judge stating in relevant part: "As to Count B, we cannot reach a unanimous agreement on a number of predicate acts. Do you want us to note on [the] verdict form those predicate acts to which we cannot agree? We have made extensive effort to obtain an agreement and don't feel we can." After hearing from the jury that further deliberations would be fruitless, the trial judge instructed the jury to

---

[1]The State charged Hoyle in Count B under Idaho Code Ann. § 18-7804(a), which provides in pertinent part:

It is unlawful for any person who has received any proceeds derived directly or indirectly from a pattern of racketeering activity in which the person has participated, to use or invest, directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of any interest in, or the establishment or operation of, any enterprise or real property.

fill out the verdict form. . . . On those answers to charges, to questions, and to predicate acts on which you have unanimously agreed, . . . put in your decision or answers to those questions. On any questions or predicate acts on which you do not unanimously agree, please . . . write down next to that "NA" for no agreement.

These instructions to the jury comported with Idaho law, *see* Idaho Code Ann. § 19-2307, and with defense counsel's request. In light of the jury's note, however, Hoyle's counsel moved for a mistrial, which was taken under advisement pending the announcement of the verdict.

At 12:47 a.m., on June 12, 1999, the jury returned its verdict to the judge, who read its contents into the record and polled the jury to confirm its verdict as to the matters on which the jury had and had not agreed. The verdict form as to Count B, with italicized text to reflect the jury's action and any handwritten comments on the form, reads in relevant part:

> 1A. — Did the defendant commit at least two incidents of racketeering conduct? *The jury checked "No," but noted "except as to the seven predicate acts upon which we could not reach unanimous agreement."*
>
> 1B. — Check the appropriate box to reflect your verdict with respect to each of the following predicate acts. *The jury checked the "not guilty" boxes for twenty-three predicate acts, but wrote "no agmt" beside the boxes provided for Predicate Act Numbers 9, 10, 11, and 62 (which pertained to grand theft); and Predicate Act Numbers 108, 115, and 118 (which pertained to insurance fraud).*
>
> 1C. — Did the incidents of racketeering conduct that you find were proven have the same or similar inci-

dents, results, victims, methods of commission or were they otherwise so interrelated by distinguishing characteristics that they were not isolated incidents? *The jury provided no answer.*

1D. — (If your answer to either question 1A or 1C is "NO," then you must answer both parts of 1D "NOT GUILTY.") Considering your answers to the foregoing questions under the heading "Count B," and considering all the other required elements of the crime of racketeering, you must decide whether the state proved or failed to prove beyond a reasonable doubt that the defendant committed the crime of racketeering under the "investment" theory and the "participation" theory. *The jury checked the "not guilty" box as to both the investment and participation theories, but wrote underneath its verdict "except as to the seven predicate acts upon which we could not reach unanimous agreement."*[2]

The trial court entered a judgment of acquittal on Counts A and E and twenty-three predicate acts under Count B. Hoyle then filed a Motion for Judgment of Acquittal on Count B, and the State filed a Motion for a New Trial on Count B. On August 11, 1999, the Idaho district court denied Hoyle's Motion for Judgment of Acquittal and granted the State's Motion for a New Trial, ruling that the jury had not returned a verdict on the entirety of Count B in light of the seven predicate acts on which it could not agree.

On August 17, 2000, the State informed the trial court that it would not proceed to retrial on Count B because it was filing a second prosecution under Case No. H0000795 ("Case 795"). Case 795 charged Hoyle with five of the seven predicate acts as separate and independent offenses. The State indi-

---

[2]The jury form, in its entirety, is attached to the opinion as Appendix A.

cated that it would move to amend the indictment in Case 795, and, if granted, would move to dismiss the first case involving the racketeering charges in Count B. On the date of retrial, September 11, 2000, the trial court denied Hoyle's renewed Motion for Judgment for Acquittal and dismissed the racketeering charges without prejudice.

The Court of Appeals of Idaho held that the trial court did not abuse its discretion in denying the Motion for Judgment of Acquittal based on the determination that the jury did not return a unanimous verdict on all the predicate acts under Count B. The Idaho Supreme Court granted Hoyle's petition for discretionary review on the issue, and, in a 3-2 decision, affirmed the decision of the appeals court. *State v. Hoyle*, 140 Idaho 679, 688, 99 P.3d 1069, 1073, 1078 (Idaho 2004). Stating that the majority had not addressed Hoyle's double jeopardy claim, Justice Eismann concluded in dissent that the annotated verdict form was ambiguous about the basis on which the jury reached its not guilty verdict because the jury might have determined that the State did not prove an element of racketeering (such as the pattern of racketeering activity). *See id.* at 1080 (Eismann, J., dissenting). Given this ambiguity, the dissent continued, Hoyle's subsequent prosecution in Case 795 should be barred under the Double Jeopardy Clause because the independent charges were lesser included offenses of racketeering, as charged in Count B, for which Hoyle was acquitted with the "not guilty" verdict. *See id.* at 1081-82 (Eismann, J., dissenting). Justice Eismann's dissent prompted a petition for rehearing on the double jeopardy issue, which the Idaho Supreme Court summarily denied.

Hoyle next filed a petition for writ of habeas corpus under 28 U.S.C. § 2241(c)(3) in the United States District Court for the District of Idaho.[3] The district court denied the petition on

---

[3]"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3)."

the ground that the verdict form did not reflect an unqualified not guilty verdict on Count B because of the seven excepted predicate acts, concluding that the handwritten notations on the verdict form could not be disregarded as mere surplusage. The district court also determined that the record supported this interpretation. In particular, the district court found: (1) that the jury had made the obvious communication in open court to the trial judge that it was deadlocked on some predicate acts; (2) that because of the lack of unanimity, Hoyle's trial counsel requested a mistrial; and (3) that the special verdict form required the jury to indicate "not guilty" if the state had not proven two or more incidents of racketeering. The district court concluded that "[b]ecause the jurors could not agree whether Petitioner had committed these seven acts, it follows that they also did not resolve whether Petitioner committed 'at least two incidents of racketeering conduct' . . . or, if so, whether those incidents amounted to a 'pattern of racketeering activity.' " Because Hoyle was not acquitted of the entire racketeering charge, the district court held that double jeopardy did not bar prosecution of Case 795 and denied habeas relief. Hoyle timely appealed.

## II

Where a petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, which empowers district courts to provide habeas relief on pretrial double jeopardy challenges, *see Stow v. Murashige*, 389 F.3d 880, 886-87 (9th Cir. 2004), we do not apply the stringent standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat.1214 (codified as amended at, in relevant part, 28 U.S.C. § 2254(d)), which allows for relief from a state court judgment only where a state court decision was "contrary to" or an "unreasonable application of" clearly established federal law. *Id.* at 888.

The parties dispute the appropriate degree of deference we should give the state trial court's determinations about the

annotated jury verdict form. The State argues, relying on *Sumner v. Mata*, 449 U.S. 539 (1981), and *Gonzalez v. Justices of the Mun. Court*, 382 F.3d 1 (1st Cir. 2004), *vacated and remanded*, 544 U.S. 918 (2005), that we must defer to the state trial court's "factual finding with respect to the jury's position on the racketeering charge." Hoyle argues that the relevant facts here are undisputed regarding the central issue of the verdict form, *i.e.* its notations and the manner in which it was returned. Hoyle further contends that, given these uncontroverted facts, it is the legal effect of the annotated verdict form that is at issue — a mixed question of law and fact that must be reviewed de novo.

We conclude that the traditional pre-AEDPA standard of review applies—we review factual findings with a presumption of correctness and conclusions of law *de novo*. *See Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002); *see also Stow*, 389 F.3d at 888. Yet there is a genuine issue of whether the trial court's determination that the annotated verdict form did not constitute an acquittal of all the racketeering charges is a finding of fact or a legal conclusion. On this issue we agree with Hoyle that the effect of the annotated "not guilty" verdict — whether it acquitted Hoyle as to the racketeering conduct alleged under Count B — is a mixed question of law and fact. *See Thompson v. Keohane*, 516 U.S. 99, 110 (1995) (holding that under pre-AEDPA standards, factual findings made by a state court are entitled to a presumption of correctness, but federal courts are not required to defer to state court determinations of mixed questions of law and fact); *see also In re Indian Gaming Related Cases*, 331 F.3d 1094, 1107 (9th Cir. 2003) ("A mixed question of law and fact exists where the relevant facts are undisputed and the question is whether those facts satisfy the applicable legal rule."); *Suzy's Zoo v. Comm'r of Internal Revenue*, 273 F.3d 875, 878 (9th Cir. 2001) ("A mixed question of law and fact exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute."). We thus review de novo the district court's conclusions about the legal import of the anno-

tated jury verdict, *see Stow*, 389 F.3d at 888, but will uphold any underlying factual findings absent a rebuttal of the presumption of correctness. *See Allen*, 305 F.3d at 1050.

## III

The crux of the issue for us is whether the special verdict form, which featured the key notation — "except as to the seven predicate acts upon which we could not reach unanimous agreement" — next to the checked "Not Guilty" box for the Count B racketeering charges, reflected an unambiguous verdict of acquittal or a qualified verdict that excluded the seven excepted predicate acts thereby reflecting its inability to reach a unanimous verdict on Count B. If Hoyle was acquitted altogether, the constitutional prohibition against double jeopardy would bar the State from prosecuting him in Case 795 for the alleged independent acts that overlap with the predicate acts of the Count B racketeering charges. *See Brown v. Ohio*, 432 U.S. 161, 167-69 (1977); *Green v. United States*, 355 U.S. 184, 188 (1957). Hoyle contends that the not guilty verdict encompasses the entirety of Count B, and that a reviewing court may not reconstruct a jury verdict once rendered. The State counters that Hoyle's premise is incorrect that the jury's not guilty verdict encompassed the seven predicate acts because the jury's notation explicitly qualified its verdict as lacking unanimity.

[1] The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. "It has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when not followed by any judgment, is a bar to a subsequent prosecution for the same offence." *Green*, 355 U.S. at 188 (internal quotation marks omitted). An acquittal on a greater offense generally bars a second prosecution for any lesser included offenses. *See*

*Brown*, 432 U.S. at 169 ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."); *see also Price v. Georgia*, 398 U.S. 323, 329 (1970).

[2] The principle that an acquittal invokes double jeopardy protection, barring a new prosecution for the same offense or lesser included offenses, has been applied with vigor, and brooks no exception based on the theory that the trier of fact acquitted in error. *See Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (per curiam) (holding that an acquittal prevents a second prosecution even if it is based upon an "egregious error" of fact or law); *see also United States v. Ogles*, 440 F.3d 1095, 1100-01 (9th Cir. 2006) (holding prohibition against double jeopardy precluded government appeal of allegedly flawed judgment of acquittal under Federal Rule of Criminal Procedure 29(a)); *United States v. Ember*, 726 F.2d 522, 524 (9th Cir. 1984) ("Even if the rulings excluding the evidence were erroneous, double jeopardy bars this appeal if the district court's action is properly characterized as a judgment of acquittal."). Nonetheless, the principle of double jeopardy protection following an acquittal does not apply routinely in the case of a mistrial as a bar to a second prosecution where the trial court has declared a mistrial because the jury could not reach a unanimous verdict.[4] *See Richardson v.*

---

[4]In certain non-routine instances, the protection of the Double Jeopardy Clause remains even after a mistrial. For instance, the Double Jeopardy Clause continues to shield a "defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *Oregon v. Kennedy*, 456 U.S. 667, 674 (1982) (internal quotation marks omitted). It also bars retrials where "bad-faith conduct by judge or prosecutor," *United States v. Jorn*, 400 U.S. 470, 485 (1971) (plurality opinion), "threatens [harassment] of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *United States v. Dinitz*, 424 U.S. 600, 611 (1976) (internal quotation marks omitted).

*United States*, 468 U.S. 317, 324 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause."); *see also United States v. Scott*, 437 U.S. 82, 92 (1978) ("When a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy."). An acquittal for double jeopardy purposes is defined as "resolution, correct or not, of some or all of the factual elements of the offense charged." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005) (internal quotation marks omitted).

In contending that the jury verdict here acquitted Hoyle of Count B, Hoyle relies on our authority in *Stow*, 389 F.3d 880, to argue that a reviewing court must accept the verdict without the benefit of subsequent reconstruction. The State responds that *Stow* can be distinguished where, as here, the jury unambiguously excepted the seven predicate acts from its not guilty verdict. The State argues that the district court properly relied on *United States v. Ailsworth*, 138 F.3d 843 (10th Cir. 1998), *United States v. Nooks*, 446 F.2d 1283 (5th Cir. 1971), and *Cook v. United States*, 379 F.2d 966 (5th Cir. 1967), to conclude that a jury's verdict must be clear and unqualified, and a reviewing court may look to the record surrounding a jury's verdict to discern a jury's intent and to give effect to that intent. We evaluate these precedents in aid of our resolution of his appeal.

In *Stow*, the defendant had been charged with attempted murder in the first degree and the second degree. 389 F.3d at 882. After the jury returned a guilty verdict for the first degree attempted murder charge and a not guilty verdict for the second degree attempted murder charge, the trial court entered a judgment on the first degree count. The record was silent, however, as to whether defense counsel or the trial court noticed that the jury had marked "not guilty" as to the second degree count. *Id*. The record reflected that the trial judge only gave an instruction regarding attempted murder in the first

degree without adding a supplemental instruction, as required under Hawaii law, that the jury should stop deliberating if it found the defendant guilty of that count. *Id.* at 884. Later, the Hawaii Supreme Court overturned the conviction, but held that the not guilty verdict for the second degree attempted murder charge did not "in substance" constitute an acquittal. *Id.* at 882, 885. This decision cleared the path for the state to mount a second prosecution against the defendant on that charge. *Id.* at 882.

Despite the possibility that there had been jury confusion or mistake, we rejected in *Stow* the Hawaii Supreme Court's theory that the "not guilty" verdict was not an acquittal "in substance," concluding that a second prosecution was barred by the "fundamental" and "absolute" prohibition against double jeopardy. *Id.* at 888. "That there cannot be further appellate inquiry into a jury's verdict is confirmed by the doctrine that even 'egregiously erroneous' jury verdicts are nonetheless a bar to a subsequent prosecution." *Id.* at 890 (quoting *Fong Foo*, 369 U.S. at 143). We held, moreover, that this prohibition applies even if there was "instructional error," *id.* at 891, or in the event of inconsistent verdicts. *See id.* at 892 (citing *United States v. Powell*, 469 U.S. 57, 65 (1984)); *see also McNeil v. Middleton*, 402 F.3d 920, 921 n.2 (9th Cir. 2005).

The verdict at issue in *Stow* is distinguishable from the annotated verdict form here. The jury in *Stow* returned inconsistent verdicts that potentially arose from the trial court's oversight in not giving the supplemental instruction to halt deliberations after the jury found the defendant guilty of first degree attempted murder. *See* 389 F.3d at 884. In that context, we held that there could be no appellate inquiry into the meaning of the verdict. *See id.* at 891-92. In contrast to the jury's notations qualifying its not guilty verdict here, the jury's verdict in *Stow* did not contain any explanation that could reconcile the inconsistency between the guilty verdict for first degree attempted murder and the not guilty verdict for the lesser included offense of second degree attempted mur-

der. The absence of any preexisting explanation by the jury on the verdict form in *Stow* is a salient difference from the annotated verdict here because the reviewing court in *Stow* was in a position where it could only "speculate" about the jury's decision to mark not guilty on the second degree attempted murder charge. *Id.* at 883.

This contextual silence in *Stow* contrasts with the record of the proceedings here that establishes with certainty that the court and parties were aware that the jury expressly excepted seven predicate acts from its verdict. After long deliberation, the jury told the trial judge that it was deadlocked on several predicate acts under Count B. This lack of unanimity prompted Hoyle's trial counsel to request a mistrial. *See Scott*, 437 U.S. at 93 (noting that "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution . . . ." (internal quotation marks omitted)); *United States v. See*, 505 F.2d 845, 854 (9th Cir. 1974) (holding, while affirming the grant of a mistrial, that "hopelessly deadlocked" jury is proper grounds for mistrial). In turn, the trial judge ascertained the jury's particular reservations by eliciting, through his instructions,[5] responses from the jury on the special verdict form. Hoyle's trial counsel acceded to this instruction that invited the jury's annotated verdict with respect to the seven predicate acts on which there was disagreement. In *Stow*, the record suggested no comparable context that disclosed the jury's intent. *See* 389 F.3d at 883. *Stow* thus does not control the inquiry here.

Absent the applicability of *Stow* or any other binding authority, we consider extra-circuit authority that permits consideration of a jury's verdict notations and the context in which the verdict was rendered to give effect to the jury's intent.

---

[5]"On any questions or predicate acts on which you do not unanimously agree, please . . . write down next to that "NA" for no agreement."

**[3]** In *Ailsworth*, the Tenth Circuit held that unnecessary or irrelevant statements in a verdict form may be disregarded as surplusage, *except* "where the circumstances of the jury's recommendation cast doubt upon the unqualified nature of the verdict." 138 F.3d at 846. In that case, the defendant had been charged under a multicount indictment. *See id.* at 845-46. When the jury returned its verdict, it checked the "guilty" box on the verdict form corresponding to Count 1 but added a notation that the defendant was guilty of Count 1 "as related to Counts # 26, 27 and 28 on 11/19/93 only." *Id.* at 845 (alteration omitted). The defendant claimed that the district court abused its discretion in not granting a motion for acquittal because the verdict was ambiguous and the trial judge should have inquired about the notation. *Id.* at 846.

The Tenth Circuit conceded that "[t]he district court should have made some inquiry into the meaning of the notation to resolve this qualification." *Id.* at 847. Rejecting the defendant's claim that the verdict was ambiguous, however, the Tenth Circuit held that the trial court's inaction "would require a reversal *only if* an inquiry would have revealed a reasonable interpretation of the notation which would have cast doubt on the jury's finding that Defendant conspired to commit the crimes charged in Counts 26, 27, and 28." *Id.* at 847-48 (emphasis added). Examining the verdict form "in light of the jury questions to the court, the court's answers and instructions," the *Ailsworth* court rejected alternative interpretations of the verdict form notation and concluded that the trial court did not commit reversible error because "[t]he only reasonable interpretation of the jury's notation is that the jury was not convinced beyond a reasonable doubt that Defendant participated in the single broad conspiracy alleged in the indictment," but was convinced "that Defendant participated in a conspiracy relating to Counts 26, 27, and 28." *Id.* at 847-48.

**[4]** The Tenth Circuit rule is in line with Fifth Circuit authority that a verdict is valid if it "was certain, unqualified

and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict." *Cook*, 379 F.2d at 968; *see also Nooks*, 446 F.2d at 1290 ("The verdict of the jury should be construed with reference to the indictment, the court's charge, and the entire record to arrive at the intention of the jury, and all fair intendments should be made to sustain the verdict.").

In *Cook*, the Fifth Circuit considered a jury verdict convicting an attorney on three counts of willfully understating net earnings from his law practice on his personal income tax returns. 379 F.2d at 967-68. Despite the "guilty" verdict, the jury added a handwritten note at the bottom of the verdict form requesting that the court give the defendant "every degree of leniency." *Id.* at 968. When the jury was polled, moreover, a majority of jurors responded, "Guilty, based on the note at the bottom," or with similar language. *Id.* at 969. The trial court rejected defense counsel's motion that the trial court inquire whether the jury's vote was qualified by the addition of the note because "the verdict is not ambiguous, it speaks for itself." *Id.* at 969 n.3. Under those exceptional circumstances, the Fifth Circuit reversed the trial court because it committed reversible error by not granting defense counsel's request to inquire into the jury's exact intent, where the court of appeals had "serious doubt that the jury did not qualify its verdict of guilty [by] predicating and conditioning it on the request for 'every degree of leniency possible.' " *Id.* at 970. The *Cook* court held "that the jury's verdict, taken together with the court's comments to the jury on receipt of the verdict and the responses of each juror to the court's poll, showed an obscurity — a lack of definite and precise meaning — and that obscurity having rendered the verdict doubtful and not having been clarified by the trial court . . . was fatal to it." *Id.* at 971. *But cf. Rogers v. United States*, 422 U.S. 35, 38 (1975) (noting that jury requests for leniency on the verdict form are usually deemed surplusage); *United States v. Lee*, 532 F.2d 911, 915 (3rd Cir. 1976) (affirming trial court's acceptance of verdict with appended note requesting leniency

where the polled jurors, unlike in *Cook*, "indicated their agreement with the guilty verdict without equivocation or qualification whatsoever"). In short, the Fifth Circuit concluded that, in light of the annotated verdict, "the circumstances strongly suggest that there would have been no agreement as to the verdict unless the recommendation of leniency was also accepted," and that the "effect of the recommendation, steadfastly adhered to on the poll, was to nullify the verdict." *Cook*, 379 F.2d at 970. The court relied upon the general rule: "There is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *Id.*

**[5]** Although these extra-circuit cases did not involve questions of double jeopardy, these precedents are persuasive in providing criteria for determining the intent and effect of an annotated verdict. We thus adopt a rule that a reviewing court may look to notations on a verdict form, other than surplusage, to clarify the jury's intent and the effect of its verdict in order to ascertain if the defendant has been acquitted of a particular charge. In addition, in cases where the jury has written notations on the verdict form, but in *only* those cases, a reviewing court may look to the context of the verdict, including jury requests for clarification, a trial judge's instructions, polling of the jury, and other court proceedings evidenced in the record that bear on a reasonable interpretation of what the jury has intended in its annotated verdict.[6]

**[6]** Here, it is beyond question that all parties concerned understood that the jury was hung on the seven excepted pred-

---

[6]Our holding does not undermine the robust Double Jeopardy jurisprudence recognizing that where a verdict form states simply "not guilty," courts may not inquire into the surrounding context to determine the jury's intent. As we have stated time and again, a "not guilty" verdict is a "not guilty" verdict, even where we strongly suspect a jury mistake, or even an "egregious error." *See Stow*, 389 F.3d at 890-92 (citations omitted). Here, only because the verdict form itself was ambiguous may we engage in further investigation to determine the jury's intent.

icate acts, and that is the conclusion reasonably drawn from the verdict form notations. The trial judge properly sought to clarify how the jury should proceed if it could not reach unanimous agreement on all predicate acts by the instruction that the jurors note where they were in disagreement as to any predicate acts. The record also establishes that the jury faithfully complied with the trial judge's instruction and consistently noted its lack of unanimity about the excepted seven predicate acts on the special verdict form.

As to the content of the notations, the interpretation of the verdict form in Justice Eismann's dissent, which Hoyle adopts in its entirety, does not convince us, but we set out the reasoning to explain our contrary view:

> Another possible interpretation is that the notation somehow qualified the verdict of not guilty of racketeering. The jury was not asked to clarify the meaning of the notation. It is sufficient, however, that the verdict could have been based upon a finding that the State had failed to prove one essential element of racketeering (such as a pattern of racketeering activity). In that circumstance, the jury would be required to return a not guilty verdict to racketeering even if it could not unanimously agree upon all of the alleged predicate acts.

*Hoyle*, 99 P.3d at 1080 (Eismann, J., dissenting). In our view, Justice Eismann's observations do not adequately account for the notation that excepted seven predicate acts. The proffered interpretation also cannot be reconciled with the jury's responses to the trial judge's questions or the structure of the special verdict form.

The correctness of the district court's interpretation of the verdict form must be examined in light of the elements of racketeering under the Idaho statute.[7] There was no dispute

---

[7]Under Idaho Code Ann. § 18-7804(a), Hoyle was charged with both participation in a racketeering activity and investment of proceeds derived

that Hoyle qualified as a "person, " *see* Idaho Code Ann. § 18-7803(b), and that Hoyle Insurance qualified as an "enterprise." *See* Idaho Code Ann. § 18-7803(c). The critical issue for the jury was whether the State adduced sufficient evidence to prove Hoyle committed at least two predicate acts. *See* Idaho Code Ann. § 18-7803(a)(1)-(12) (enumerating chargeable racketeering offenses). If so, it was incumbent on the State to prove that any two predicate acts were sufficiently related to constitute a pattern of racketeering activity. *See State v. Nunez*, 133 Idaho 13, 18, 981 P.2d 738, 743 (Idaho 1999); Idaho Code Ann. § 18-7803(d).

The jury's responses to Count B, Questions 1A and 1B suggest in harmony that the jury was deadlocked on the issue of whether Hoyle had committed the seven excepted predicate acts. In response to Question 1A—"Did the defendant *commit* at least two incidents of racketeering conduct" (emphasis added)—the jury checked "No," but noted "except as to the seven predicate acts upon which we could not reach unanimous agreement." The jury then specified in its response to Question 1B the particular seven predicate acts on which there was no agreement. In light of these questions and responses, we think it must inescapably be inferred that the jury could not agree whether the State proved that Hoyle committed the seven excepted predicate acts.

---

from a racketeering activity. The statute sets forth offenses that may be charged as predicate acts to racketeering, including grand theft and insurance fraud, *see* Idaho Code Ann. § 18-7803(a)(2) and (10), which were the particular charges relevant to the seven excepted predicate acts. Idaho Code Ann. § 18-7803(d) defines "pattern of racketeering activity" as

> engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided . . . that the last of such incidents occurred within five (5) years after a prior incident of racketeering conduct.

Count B, Question 1C directed the jury to answer the following query: "Did the incidents of racketeering conduct *that you find were proven* have the same or similar incidents, results, victims, methods of commission or were they otherwise so interrelated by distinguishing characteristics that they were not isolated incidents?" (emphasis added). The jury did not answer this question. Because Question 1C called for a determination on the relatedness element only with respect to "proven" racketeering conduct, the fact that the jury left the answer to Question 1C blank thus reasonably must mean that the jury did not reach this issue and that it was deadlocked on the issue of Hoyle's commission of the seven predicate acts.

The jury ultimately checked "not guilty" at the bottom of the special verdict form in response to sub-Question 1D because the special verdict form *required* the jury to do so in the event of a negative answer to sub-Question 1A. ("If your answer to either question 1A or 1C is 'NO,' then you must answer both parts of 1D 'NOT GUILTY.'") The fact that the jury provided a parallel qualification from its response to Question 1A in response to Question 1D can only reasonably mean that the not guilty verdict did not encompass the seven predicate acts. As in *Ailsworth*, we reject Hoyle's argument based on his interpretation of the jury's notations on the verdict form that the intent of the jury was ambiguous. *See* 138 F.3d at 847-48. In light of the consistent qualifications of its verdict on Count B in response to Questions 1A, 1B and 1D, and the absence of a response to Question 1C, the district court did not err in its interpretation of the verdict form.

[7] The notations on the verdict form could only reasonably mean that the jury could not reach a unanimous verdict on Count B as to the excepted seven predicate acts because it could not agree on whether Hoyle committed the seven predicate acts. As discussed above, the context of the proceeding unmistakably reinforces this reasonable interpretation because the jury was deadlocked prior to responding to the trial judge's instruction prompting Hoyle's motion for a mistrial,

the record documents the jury's request for clarification and the trial judge's responsive instruction, and the jury was polled about the predicate acts on which there was no agreement. The language and context of the jury's notations reflect that the jury did not return an unambiguous verdict of not guilty on Count B. *See Ailsworth*, 138 F.3d at 846 (cautioning that jury's notations may not be disregarded when "the circumstances of the jury's recommendation cast doubt upon the unqualified nature of the verdict"). Because the jury excepted from its verdict the seven predicate acts on which it could not agree, the trial court correctly refused to acquit Hoyle of Count B because the verdict was not "a resolution . . . [of] all of the factual elements of the offense charged." *Smith*, 543 U.S. at 468. The trial court appropriately declared a mistrial, which leaves the State unimpeded to prosecute Case 795 without running afoul of the Double Jeopardy Clause.

**AFFIRMED.**

**APPENDIX A**

FILED

A.M. _1:00_ P.M. _____

JUN 1 2 1999

DAVID NAVARRO, CLERK
BY _____
DEPUTY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. H9700620 |
| | ) | |
| RICHARD HOYLE, | ) | |
| | ) | **VERDICT** |
| Defendant. | ) | |
| | ) | |

We the jury in the above entitled case return the following
verdict:

**COUNT A**

What is your verdict as to Count A - Soliciting the Destruction of
Evidence?

Guilty _____

Not Guilty _✓ SC_

**COUNT B**

1A. Did the defendant commit at least two incident of racketeering
conduct?

Yes _____

No _✓_

*EXCEPT AS TO THE SEVEN PRECEDING ACTS UPON WHICH WE COULD
NOT REACH UNANIMOUS AGREEMENT, SC*
If you answered Question 1A "NO" please skip questions 1B and
1C and go to question 1D.

00847

1B. Check the appropriate box to reflect your verdict with respect to each of the following predicate acts.

Predicate Act 1 (Insurance Fraud)  Guilty _____

Not Guilty ✓ SΩ

Predicate Act 2 (Forgery)  Guilty _____

Not Guilty ✓ SΩ

Predicate Act 6 (Grand Theft)  Guilty _____

Not Guilty ✓ SΩ

Predicate Act 7 (Grand Theft)  Guilty _____

Not Guilty ✓ SΩ

Predicate Act 9 (Grand Theft)  Guilty _____  NO

Not Guilty _____  AGMT SΩ

Predicate Act 10 (Grand Theft)  Guilty _____  NO

Not Guilty _____  AGMT SΩ

Predicate Act 11 (Grand Theft)  Guilty _____  NO

Not Guilty _____  AGMT SΩ

Predicate Act 12 (Grand Theft)  Guilty _____

Not Guilty ✓ SΩ

Predicate Act 24 (Grand Theft)  Guilty _____

Not Guilty ✓ SΩ

00848

Predicate Act 30 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 31 (Grand Theft by Deception)
                                        Guilty_____

                                        Not Guilty ___√SO__

Predicate Act 39 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 40 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 41 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 43 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 48 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 52 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 53 (Grand Theft)          Guilty _____

                                        Not Guilty ___√SO__

Predicate Act 62 (Grand Theft)          Guilty _____      NO

                                        Not Guilty_____     ASMT
                                                                 SO

                                        00849

Predicate Act 90 (Grand Theft)          Guilty _____
                                        Not Guilty __✓ SQ___

Predicate Act 108 (Insurance Fraud)     Guilty _____      NO
                                        Not Guilty_____     AGmt
                                                                SQ

Predicate Act 109 (Forgery)             Guilty _____
                                        Not Guilty __✓ SQ___

Predicate Act 110 (Insurance Fraud)     Guilty _____
                                        Not Guilty __✓ SQ___

Predicate Act 111 (Insurance Fraud)     Guilty _____
                                        Not Guilty __✓ SQ___

Predicate Act 114 (Forgery)             Guilty _____
                                        Not Guilty __✓ SQ___

Predicate Act 115 (Insurance Fraud)     Guilty _____      NO
                                        Not Guilty_____     AGmt
                                                                SQ

Predicate Act 117 (Insurance Fraud)     Guilty _____
                                        Not Guilty __✓ SQ___

Predicate Act 118 (Insurance Fraud)     Guilty _____      NO
                                        Not Guilty_____     AGmt
                                                                SQ

Predicate Act 119 (Insurance Fraud)     Guilty _____
                                        Not Guilty __✓ SQ___

00850

Predicate Act 120 (Insurance Fraud)     Guilty _____

                                        Not Guilty __✓✗O__

1C.  Did the incidents of racketeering conduct that you find were
proven have the same or similar incidents, results, victims, methods
of   commission    or    were    they   otherwise    so   interrelated   by
distinguishing characteristics that the were not isolated incidents?

                                        Yes_____

                                        No _____

1D.  (If your answer to either Question 1A or 1C is "NO", then you
     must answer both parts of 1D "NOT GUILTY".)

Considering your answers to the foregoing questions under the
heading "Count B", and considering all the other required elements
of the crime of racketeering, you must decide whether the state
proved or failed to prove beyond a reasonable doubt that the
defendant committed the crime of racketeering under the "investment"
theory and the "participation" theory.

Racketeering under the "investment" theory:
                                        Guilty _____

                                        Not Guilty __✓___

Racketeering under the "participation" theory:
                                        Guilty_____

                                        Not Guilty __✓___

EXCEPT AS TO THE SEVEN PREDICATE ACTS UPON WHICH
WE COULD NOT REACH UNANIMOUS AGREEMENT. SO⟶

**COUNT E**

What is your verdict as to Count E - Solicitation of Grand Theft?

Guilty _____

Not Guilty ✓ _____

Dated this 12ᵗʰ day of June, 1999.

MODERATOR _____

00852