[No. 77756-0.   En Banc.]
Argued October 9, 2007.     Decided July 10, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN THOMAS EGGLESTON, *Petitioner*.

*Sheryl G. McCloud* (of *Law Offices of Sheryl G. McCloud*), for petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *John M. Sheeran* and *Kathleen Proctor, Deputies*, for respondent.

¶1 MADSEN, J. — Brian Eggleston has been tried three times for Deputy John Bananola's murder. The first trial ended in a mistrial. In the second, the jury expressly found Eggleston not guilty of first degree murder but found him guilty of second degree murder. Using a special verdict form, the jury found Eggleston had not knowingly killed a police officer. Following an appeal, the conviction was vacated based on a number of trial errors. Eggleston was tried a third time. During the third trial, the State argued Eggleston knowingly killed a police officer. He was again convicted of second degree murder, and the trial court judge imposed an exceptional sentence because the court found Eggleston knowingly killed a police officer. Eggleston sought review on a number of issues, including whether double jeopardy precludes his second conviction and whether the State can impanel a new sentencing jury under former RCW 9.94A.537 (2005). We hold that the double jeopardy clause did not prevent Eggleston's retrial on the "law enforcement" aggravating factor and affirm the Court of Appeals. We decline to consider whether the State can seek an exceptional sentence on remand because that issue is not ripe.

## FACTS

¶2 On the morning of October 16, 1995, Pierce County sheriff's deputies raided the home of Brian Eggleston pursuant to a validly issued search warrant. Clerk's Papers (CP) at 438. When the sheriff's deputies entered the home, a fire fight erupted. In the course of this fight, Deputy Bananola was shot several times and killed, and shots were fired at other deputies, including Deputy Warren Dogeagle. The deputies shot Eggleston several times as well. When the deputies subdued Eggleston, they searched the home and found several guns and controlled substances. Eggleston has since been tried three times for the events of that morning.

<u>Eggleston's First Trial</u>

¶3 The State charged Eggleston by third amended information on February 24, 1997. CP at 1102-07. The information charged Eggleston with aggravated murder in the first degree, assault in the first degree, unlawful delivery of a controlled substance (marijuana), unlawful possession of a controlled substance with intent to deliver (marijuana), unlawful delivery of a controlled substance (marijuana), and unlawful possession of a controlled substance (mescaline). The jury found Eggleston guilty of assault and all drug charges. But, the jury was unable to reach a verdict on the first degree murder charge. The trial court sentenced Eggleston on June 13, 1997 on the drug and assault convictions within the standard range. CP at 1204-11.

<u>Eggleston's Second Trial</u>

¶4 On May 15, 1997, the State scheduled a new trial for Eggleston on aggravated murder in the first degree. CP at 1202. At the close of evidence, the court asked the jury to consider both first degree murder and the lesser included offense of second degree murder. The jury instructions provided, "If you find the defendant guilty of first degree

murder . . . you will then use the two special verdict forms . . . and fill in the blanks with the answers 'yes' or 'no' according to the decisions you reach." CP at 1492. One of the special verdict forms read:

> We, the jury, having found the defendant guilty of Murder in the First Degree, make the following answer to the question submitted by the court:
>
> Question: Has the State proven the existence of the following aggravating circumstance beyond a reasonable doubt?
>
> That Deputy John Bananola was a law enforcement officer who was performing his official duties at the time of the act resulting in death and that Deputy John Bananola was known or reasonably should have been known by the defendant to be such at the time of the killing.
>
> Answer: No.

CP at 1495. The jury explicitly found Eggleston "not guilty" of first degree murder and guilty of second degree murder. Accordingly, the jury was not required to use the special verdict form.

¶5 At sentencing, the State recommended an exceptional sentence. However, the trial court did not find "substantial and compelling reasons exist which justify an exceptional sentence" and sentenced Eggleston within the standard range. The Court of Appeals reversed Eggleston's murder and assault convictions due to an error in the jury instructions, juror misconduct, and a number of evidentiary errors. *State v. Eggleston*, noted at 108 Wn. App. 1011 (2001) (unpublished).

### Eggleston's Third Trial

¶6 On November 9, 2001, the State refiled an information charging Eggleston with murder in the second degree and assault in the first degree. CP at 1. In the third trial, the State repeatedly argued Eggleston knew that Bananola was a police officer. *See, e.g.*, 40 Verbatim Report of Proceedings (VRP) (Dec. 12, 2002) at 6313-14, 6316, 6323,

6326, 6449-50; 41 VRP (Dec. 13, 2002) at 6474. Eggleston argued he was unaware Bananola was a police officer and he was acting in self-defense. *See, e.g.*, 40 VRP at 6404, 6447, 6457-58, 6461, 6463. The trial court gave the jury two separate self-defense instructions. The first was a standard self-defense instruction to be used if the jury believed Eggleston was unaware Bananola was a police officer.[1] CP at 777. The second self-defense instruction limited the availability of self-defense if the jury believed Eggleston was aware Bananola was a police officer.[2] CP at 778. The jury convicted Eggleston of murder in the second degree

---

[1] "INSTRUCTION NO. 13

"It is a defense to a charge of murder or manslaughter that the homicide was justifiable as defined in this instruction.

"Homicide is justifiable when committed in the lawful defense of the slayer or the slayer's parent or any person in the slayer's presence or company when:

"(1) the slayer did not know that the person slain was a law enforcement officer;

"(2) the slayer reasonably believed that the person slain intended to commit a felony or to inflict death or great personal injury;

"(3) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and

"(4) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time of the incident.

"The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty."

[2] "INSTRUCTION NO. 14

"It is also a defense to a charge of murder or manslaughter that the homicide was justifiable as defined in this instruction.

"Homicide is justifiable when committed in the lawful defense of the slayer or the slayer's parent or any person in the slayer's presence or company when:

"(1) the slayer knew that the person slain was a law enforcement officer;

"(2) the law enforcement officer used excessive force;

"(3) the slayer was in actual and imminent danger of death or great bodily harm; and

"(4) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time of the incident.

"The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find the State has not proved the absence of

and assault in the first degree. The jury additionally found Eggleston used a firearm in the commission of these crimes.

¶7 The trial court judge imposed an exceptional sentence of 10 years above the standard range based upon the court's view that Eggleston knew Bananola was a police officer. CP at 936. The judge made several findings of fact and conclusions of law to support the sentence, including:

### X.

At least by the time he pursued Deputy John Bananola into the living room, and prior to firing three shots into Deputy Bananola's head, defendant Eggleston knew that the person at whom he was shooting was a law enforcement officer.

. . . .

### II.

The defendant's knowledge that the person at whom he was shooting, and whom he killed by firing three shots into his head, one fired from a distance of 18-24 inches, was a law enforcement officer is an aggravating factor justifying an exceptional sentence above the standard sentencing range.

CP at 935, 936.

¶8 Eggleston again appealed his conviction and sentence. Among other things, he claimed collateral estoppel and double jeopardy principles prevented evidence of, or basing a sentence upon, Eggleston's knowledge of Bananola's status as a police officer. Amended Opening Br. at 3. He also argued the trial court erred by entering an exceptional sentence on retrial in violation of his constitutional right to a jury trial. *Id.* The Court of Appeals affirmed the conviction but reversed the exceptional sentence, relying on *Blakely v. Washington*, 542 U.S. 296, 304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and remanded the case for resentencing. *State v. Eggleston*, 129 Wn. App. 418, 118 P.3d 959 (2005). This court granted review

this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty."

of only the double jeopardy and collateral estoppel issue and application of amendments to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW.

## ANALYSIS

¶9 Eggleston claims that the double jeopardy clause of the Fifth Amendment to the United States Constitution bars retrial on the aggravating factor that he knew Deputy Bananola was a law enforcement officer. The application of double jeopardy principles is a question of law, which this court reviews de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007).

¶10 The Fifth Amendment provides, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." Washington's declaration of rights similarly indicates, "No person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. Washington's double jeopardy clause is coextensive with the federal double jeopardy clause and "is given the same interpretation the Supreme Court gives to the Fifth Amendment." *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). Both double jeopardy clauses "bar[ ] trial if three elements are met: (a) jeopardy previously attached, (b) jeopardy previously terminated, and (c) the defendant is again in jeopardy 'for the same offense.'" *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996) (footnotes omitted).

¶11 The Supreme Court has held the double jeopardy clause prevents retrying a defendant on aggravating factors supporting the death penalty when a previous jury had rejected the imposition of the death penalty. *Bullington v. Missouri*, 451 U.S. 430, 446, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). However, historically, double jeopardy protections are inapplicable to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for an "offense." *Monge v. California*, 524 U.S. 721, 728, 118 S. Ct. 2246, 141 L. Ed. 2d 615

(1998).[3] Thus, the Court has declined to extend this protection against retrial to noncapital sentencing aggravators, limiting the protection to death penalty determinations. *Id.* at 730; *see also North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (holding the double jeopardy clause does not bar the imposition of a longer sentence following retrial). The Court found the departure from the general rule in the death penalty context was appropriate based on the heightened protection afforded death penalty determinations. *Monge*, 524 U.S. at 734; *see also State v. Benn*, 161 Wn.2d 256, 165 P.3d 1232 (2007) (jury's failure to find existence of an aggravating factor does not constitute an acquittal on that factor for purposes of double jeopardy), *cert. denied*, 128 S. Ct. 2871 (2008).

¶12 In this case, Eggleston was not facing a death sentence in his third trial. Accordingly, the double jeopardy clause did not prevent his retrial on the "law enforcement" aggravating factor.

¶13 Eggleston next argues that the collateral estoppel component of the double jeopardy clause precluded the State from introducing evidence that he knew Bananola was a law enforcement officer. The Supreme Court has held collateral estoppel operates in the criminal context and "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *see also State v. Peele*, 75 Wn.2d 28, 448 P.2d 923 (1968). When a fact "has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. However, collateral estoppel does not exclude all evidence "simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling v. United States*, 493 U.S. 342, 348, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). In Washington,

---

[3] In *Sattazahn v. Pennsylvania*, 537 U.S. 101, 107-08, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2002), the Supreme Court clarified its holding in *Bullington*, explaining that to "acquit" a defendant of aggravating factors, the jury must have unanimously rejected all aggravating factors presented to them.

collateral estoppel applies in a criminal context only where four questions are answered affirmatively.

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea of collateral estoppel is asserted a party or in privity with the party to the prior adjudication? (4) Will the application of the doctrine work an injustice on the party against whom the doctrine is to be applied?

*State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003). Here, the only question at issue is whether the fact to be established in the second and third trials is identical, i.e., did Eggleston know the victim was a law enforcement officer?

¶14 Eggleston claims the State impermissibly relitigated the fact of whether Eggleston knew the victim was a law enforcement officer when the State argued motive based on Eggleston's knowledge that Bananola was a law enforcement officer and when it offered the law enforcement self-defense instruction.

¶15 Initially, the defendant has the burden to "demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling*, 493 U.S. at 350. Eggleston contends that the jury's answer to the special verdict decided that "fact" against the State. A special verdict by a jury "actually decides" the fact for future prosecutions. *See Mitchell v. Prunty*, 107 F.3d 1337, 1339 n.2 (9th Cir. 1997) ("[s]pecial findings . . . are dispositive of the questions put to the jury"), *overruled on other grounds by Santamaria v. Horsley*, 133 F.3d 1242 (9th Cir. 1998).

¶16 Although courts generally give effect to jury verdicts, courts may disregard jury verdicts that are irrelevant and contradictory. "[U]nnecessary or irrelevant statements in a verdict form may be disregarded as surplusage." *United States v. Ailsworth*, 138 F.3d 843, 846 (10th Cir. 1998) (citing *Statler v. United States*, 157 U.S. 277, 279-80, 15 S. Ct. 616, 39 L. Ed. 700 (1895)). In *Statler*, 157 U.S. at

279, the Supreme Court struck a jury's comments from a verdict form, finding the words were "obviously superfluous, and striking them from the verdict leaves it, in all respects, complete and responsive to the charge." Here, the jury found Eggleston "not guilty" of first degree murder. The special verdict instructed the jury to answer the question regarding Bananola *only* if it found Eggleston guilty of first degree murder. Indeed, after the trial court polled the jury to confirm the verdicts, the trial judge observed, "The verdicts will be accepted by the court. I do want to indicate that special verdict form, aggravating circumstances, was also filled out by the jury, but it really has no significance to the verdict that the jury rendered." 57 VRP (May 20, 1998) at 8505.

¶17 Under the facts of this case, we hold that the jury's answer in the special verdict was unnecessary, irrelevant, and in violation of the court's instructions, and we decline to consider it.

¶18 Disregarding the interrogatory in the special verdict renders the first degree murder verdict a general verdict of not guilty. In deciding whether to apply collateral estoppel in the case of a general verdict, the court's inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S. Ct. 237, 92 L. Ed. 180 (1948). Where " 'a rational jury could have grounded its [general] verdict upon an issue other than that which the defendant seeks to foreclose from consideration,' " collateral estoppel will not preclude its relitigation. *Ashe*, 397 U.S. at 444 (quoting Daniel K. Mayers & Fletcher L. Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions*, 74 HARV. L. REV. 1, 38-39 (1960)). Under *Ashe*, the court must examine a general verdict to determine if " 'a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.' " *Id.* (quoting Mayers & Yarbrough, *supra*, at 38-39). Here, a rational jury could have grounded its "not guilty" verdict on a number of factors other than Eggleston's knowledge that Bananola was a police

officer, including that Eggleston lacked premeditation. Thus, collateral estoppel did not preclude the State from relitigating whether Eggleston knew Bananola was a police officer in the third trial.

¶19 Even if we were to consider the jury's answer to the interrogatory, Eggleston still fails to demonstrate that the jury's answer determines an *ultimate fact or issue* in the subsequent case. *Dowling*, 493 U.S. at 348. An "ultimate fact" is a fact "essential to the claim or the defense." BLACK'S LAW DICTIONARY 629 (8th ed. 2004). In *Dowling*, the Supreme Court refused to apply collateral estoppel because the previously decided fact was not an ultimate fact or issue in the second trial. *Dowling*, 493 U.S. at 348. There a man was charged with robbing a bank with a gun while wearing a ski mask. *Id.* at 344. During his trial for robbing the bank, the defendant was identified by a robbery victim as the man who wore a mask when he robbed her house, although he had been previously acquitted of that crime. *Id.* at 348. The Supreme Court found collateral estoppel did not bar this testimony because it "did not determine an ultimate issue in the present case." *Id.* The Court found the testimony admissible because "the Government did not have to demonstrate that Dowling was the man who entered the home beyond a reasonable doubt." *Id.* Simply stated, collateral estoppel precludes a jury from reaching "a directly contrary conclusion" rather than a conclusion reached by a prior jury. *Id.* (citing *Ashe*, 397 U.S. at 445).

¶20 Eggleston argues that collateral estoppel prevents the State from offering evidence of motive or different self-defense instructions based on Eggleston's knowledge that Bananola was a police officer. As noted earlier, two self-defense instructions were given in this case: one instruction was predicated on the defendant's knowledge that the victim was a police officer at the time of the shooting, and the other was a standard self-defense instruction. Neither evidence of motive nor self-defense instructions are ultimate facts or issues implicating collateral estoppel. This is so because the jury could have found Eggleston guilty

without also finding his motive was based on knowing Bananola was a police officer. And, as to self-defense, the jury could have rejected Eggleston's assertion that he acted in self-defense regardless of whether it found that Eggleston knew Bananola's status as a police officer. In fact, the jury rejected both theories of self-defense. Accordingly, we hold that collateral estoppel did not bar introduction of evidence in the third trial that Eggleston knew Bananola was a law enforcement officer.[4]

¶21 Next, Eggleston argues that on remand he must be resentenced within the standard range.

¶22 The parties agree that the trial judge's imposition of an exceptional sentence based on an aggravating factor, without a finding by the jury, violated *Blakely*, 542 U.S. 296. The Court of Appeals correctly vacated the exceptional sentence imposed by the trial court. *Eggleston*, 129 Wn. App. at 438. Since Eggleston's conviction, the sentencing act has been amended twice. In response to *Blakely*, the legislature first amended the SRA by adding a statute, former RCW 9.94A.537 (2005),[5] that allows juries

---

[4] Eggleston also argues that collateral estoppel prevents the imposition of an exceptional sentence based on knowingly killing a police officer. Since the exceptional sentence was reversed based on *Blakely*, we do not address this contention.

[5] RCW 9.94A.537 as amended reads:

"(1) At any time prior to trial or entry of the guilty plea if substantial rights of the defendant are not prejudiced, the state may give notice that it is seeking a sentence above the standard sentencing range. The notice shall state aggravating circumstances upon which the requested sentence will be based.

"(2) In any case where an exceptional sentence above the standard range was imposed and where a new sentencing hearing is required, the superior court may impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3), that were relied upon by the superior court in imposing the previous sentence, at the new sentencing hearing.

"(3) The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts.

"(4) Evidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3) (a) through (y) shall be presented to the jury during the trial of the alleged crime, unless the jury has been impaneled solely for resentencing,

to decide aggravating factors, the *Blakely*-fix. LAWS OF 2005, ch. 68, § 4. In *State v. Pillatos*, 159 Wn.2d 459, 150 P.3d 1130 (2007), this court found this amendment did not apply to any cases decided before its enactment. Following this decision, the legislature amended the SRA, former RCW 9.94A.537, to allow trial courts to impanel juries to decide aggravating factors in cases that had been previously decided. LAWS OF 2007, ch. 205. Eggleston contends these amendments do not apply to him because they do not act retrospectively and if they did the amendments were impermissibly ex post facto.

¶23 The State argues this question is not ripe for our review because no jury has been impaneled to determine aggravating sentencing factors in Eggleston's case. The court's jurisdiction over an issue cannot be invoked unless a justiciable controversy exists. *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 514 P.2d 137 (1973). A justiciable controversy is

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than

---

or unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3) (e)(iv), (h)(i), (o), or (t). If one of these aggravating circumstances is alleged, the trial court may conduct a separate proceeding if the evidence supporting the aggravating fact is not part of the res gest[a]e of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime.

"(5) If the superior court conducts a separate proceeding to determine the existence of aggravating circumstances listed in RCW 9.94A.535(3) (e)(iv), (h)(i), (o), or (t), the proceeding shall immediately follow the trial on the underlying conviction, if possible. If any person who served on the jury is unable to continue, the court shall substitute an alternate juror.

"(6) If the jury finds, unanimously and beyond a reasonable doubt, one or more of the facts alleged by the state in support of an aggravated sentence, the court may sentence the offender pursuant to RCW 9.94A.535 to a term of confinement up to the maximum allowed under RCW 9A.20.021 for the underlying conviction if it finds, considering the purposes of this chapter, that the facts found are substantial and compelling reasons justifying an exceptional sentence."

potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Id.* at 815.

¶24 We agree with the State. Although the Court of Appeals remanded for resentencing, we can only speculate about whether the State will request an exceptional sentence under the new statute. Accordingly, we decline to decide issues relating to former RCW 9.94A.537 because these issues are not ripe. *See Pillatos,* 159 Wn.2d at 478 (declining to decide due process challenge because new sentencing statute not yet applied to defendant).

¶25 The Court of Appeals is affirmed.

ALEXANDER, C.J.; OWENS and FAIRHURST, JJ.; and BRIDGE, J. PRO TEM., concur.

¶26 SANDERS, J. (concurring) — The majority properly reverses Brian Eggleston's exceptional sentence under *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Therefore the majority declines to consider whether collateral estoppel bars an exceptional sentence for allegedly killing a person the defendant knew to be a police officer.[6] However, this question must be answered. If collateral estoppel bars the trial court from using Eggleston's alleged knowledge to impose an exceptional sentence, then we must vacate it as baseless and have no need to reach the *Blakely* issue.

¶27 Collateral estoppel bars relitigating a fact that (1) was decided by the prior jury and (2) determines an ultimate fact or issue in the current case. *Dowling v. United States,* 493 U.S. 342, 348, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). The fact at issue is whether Eggleston knew Deputy John Bananola was a police officer when he shot him. The majority errs by refusing to credit the second jury's special

---

[6] The majority refuses to answer this question, stating, "Since the exceptional sentence was reversed based on *Blakely,* we do not address this contention." Majority at 75 n.4.

verdict that Eggleston did not.[7] Majority at 73. It further errs when it opines Eggleston's knowledge was not an ultimate issue in the third trial. *Id.* at 73-74. However, the second jury's special verdict *did* decide that fact, even if the verdict was not strictly necessary, and the fact is ultimate insofar as it was used as the basis for an exceptional sentence.

¶28 The second jury's special verdict specifically answered Eggleston *did not know* Bananola was a police officer. Answers contained in a special verdict "are dispositive of the questions put to the jury." *Mitchell v. Prunty*, 107 F.3d 1337, 1339 n.2 (9th Cir. 1997) ("Having agreed to the questions, the government cannot now ask us to ignore the answers; to do so would be a clear violation of petitioner's Sixth Amendment rights."), *overruled in part on other grounds by Santamaria v. Horsley*, 133 F.3d 1242 (9th Cir. 1998).

¶29 Although the jury may not have been required to answer the special verdict, that is not dispositive. Erroneous special verdicts by a jury are enforceable, just as a verdict of acquittal is enforceable, even where the verdict was clearly in error. *See Fong Foo v. United States*, 369 U.S. 141, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977). This is true even where "the acquittal was based upon an egregiously erroneous foundation," including the inability to enter a verdict. *Fong Foo*, 369 U.S. at 143; *Sanabria v. United States*, 437 U.S. 54, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978). Even if the jury lacks authority to render a verdict, the jury's special verdict must be given effect under *Fong Foo*.

¶30 The Ninth Circuit follows Supreme Court precedent by giving effect to a jury's verdict even where the jury was not required to complete the verdict form. For example, in *Stow v. Murashige*, 389 F.3d 880, 883 (9th Cir. 2004), the defendant was charged with attempted first degree murder and two counts of attempted murder in the second degree.

---

[7] The majority holds, "[T]he jury's answer in the special verdict was unnecessary, irrelevant, and in violation of the court's instructions, and we decline to consider it." Majority at 73.

The jury was instructed, " 'If you find the defendant not guilty . . . of attempted murder in the first degree, . . . then you must consider whether the defendant is guilty . . . of attempted murder in the second degree.' " *Id.* at 884. The jury found the defendant guilty of attempted murder in the first degree but indicated not guilty next to each of the attempted murder in the second degree charges. *Id.* The Ninth Circuit held these "not guilty" notations, although unnecessary and contrary to the jury instructions, were valid acquittals of the lesser included offenses. *Id.* at 888-92. The Ninth Circuit applies this rationale to hold special verdicts entered in error are valid and enforceable. *Hoyle v. Ada County*, 501 F.3d 1053 (9th Cir. 2007) (holding notations next to predicate acts are valid, even where the jury was instructed to skip the special verdict section), *cert. denied*, 128 S. Ct. 1482 (2008). Like *Stow* and *Hoyle*, here Eggleston's second jury was not required to answer the special verdict form, but it *did*, thus determining the issue for future trials.

¶31 The majority improperly relies upon *United States v. Statler*, 157 U.S. 277, 279, 15 S. Ct. 616, 39 L. Ed. 700 (1895) to minimize, and ultimately ignore, the second jury's special verdict. Majority at 72-73. In *Statler*, the defendant was charged "with 'having counterfeit coin in his possession with intent to defraud certain persons to this grand inquest unknown.' " *Statler*, 157 U.S. at 277. Prior to trial, the defendant admitted to possession of the coin, leaving the defendant's intent to defraud the only issue for the jury. *Id.* at 277-78. The jury wrote on the verdict form, " 'the jury finds the defendant guilty in the first count for having in possession counterfeit minor coin.' " *Id.* at 278. Thereafter the defendant argued the verdict was invalid because the jury's verdict indicates it did not intend to find him guilty. *Id.* However, the Court rejected this argument, holding the verdict was complete when it said, " 'guilty in the first count.' " *Id.* It disregarded the extra language, stating, " 'If the jury give a verdict of the whole issue and of more, . . . that which is more is surplusage and

shall not stay judgment, for *utile per inutile non vitiatur.*' "[8] *Id.* at 279 (second alteration in original) (internal quotation marks omitted) (quoting 1 GILES DUNCOMB, *Trials per Pais*: OR, THE LAW OF ENGLAND CONCERNING JURIES by Nisi Prius 287 (London, H. Woodfall & W. Strahan, Law Printers; for T. Waller, 8th ed. 1766) (1665)).

¶32 However *Statler* is inapposite to this case because, contrary to the majority's assertion, this jury's verdict contained no surplus language. The jury's answer to the special verdict form was a simple, yet responsive "No." Although the jury was not required to return this verdict, the answer given did not contain any unresponsive language, unlike the verdict in *Statler.*

¶33 Perhaps of greater importance, *Statler* does not permit a court to disregard a clear verdict by the jury, but instead requires courts to *give effect* to the otherwise "good and valid" verdict. *Statler*, 157 U.S. at 279. But the majority stands *Statler* on its head by vitiating *"that which in other respects is good and valid."* HERBERT BROOM, A SELECTION OF LEGAL MAXIMS: CLASSIFIED AND ILLUSTRATED 425 (R.H. Kersley ed., 10th ed. 1939) (1845).

¶34 Once the court gives effect to the second jury's special verdict, Eggleston cannot be given an exceptional sentence for knowingly killing a police officer contrary to the jury's verdict. Collateral estoppel bars relitigation of a previously decided fact when that fact determines an ultimate issue in the current trial. *Dowling*, 493 U.S. 342. While "evidence of motive [ ]or different self-defense instructions"[9] are not ultimate issues, the facts supporting the imposition of an exceptional sentence are.

¶35 A fact sufficient to impose an exceptional sentence is equivalent to one establishing an element of a crime. *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 153 L. Ed. 2d

---

[8] *"Surplusage does not vitiate that which in other respects is good and valid."* HERBERT BROOM, A SELECTION OF LEGAL MAXIMS: CLASSIFIED AND ILLUSTRATED 425 (R.H. Kersley ed., 10th ed. 1939) (1845).

[9] Majority at 74.

556 (2002); *State v. Goodman*, 150 Wn.2d 774, 785-86, 83 P.3d 410 (2004). As the equivalent to an element of a crime, a fact used to impose an exceptional sentence is an ultimate issue. *Santamaria*, 138 F.3d 1280; *see also People v. Superior Court*, 1 Cal. 4th 56, 78 n.22, 820 P.2d 613, 2 Cal. Rptr. 2d 389 (1991) ("The jury's rejection constituted an express acquittal on the enhancement and forecloses any retrial."). An exceptional sentence cannot be imposed where a jury would be required to "reach[ ] a directly contrary conclusion" to a prior jury. *Dowling*, 493 U.S. at 348 (citing *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)). Because a fact determined by a special verdict bars imposing an exceptional sentence contrary to that fact, Eggleston's exceptional sentence must be vacated notwithstanding any *Blakely* violation.

¶36 Here, the second jury clearly found Eggleston did not know Bananola was a police officer when he shot him. This finding is preclusive on the parties in all future trials. But the trial court, much like our majority, refused to credit the second jury's verdict; rather it imposed an exceptional sentence directly contrary to the jury's verdict. This was error. Eggleston's exceptional sentence must be vacated.

¶37 I concur in reversal.

C. JOHNSON, J., concurs with SANDERS, J.

¶38 CHAMBERS, J. (concurring) — I agree with the majority that Brian Eggleston's third trial did not violate double jeopardy or collateral estoppel and that his exceptional sentence is invalid under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). I write separately because, like Justice Sanders, I would not disregard a unanimous verdict by 12 sworn jurors.

¶39 As the majority recognizes, we generally give effect to a jury's acquittal even when clearly in error. *See Fong Foo v. United States*, 369 U.S. 141, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962). Yet the majority states, "[T]he jury's answer in the special verdict was unnecessary, irrelevant, and in violation

of the court's instructions, and we decline to consider it."
Majority at 73. Although the jurors in the second trial
should have put their pencils down after finding Eggleston
not guilty of first degree murder, I would not ignore the
special verdict form.[10]

¶40 The jury's answer to the special verdict form did not
contradict its general verdict, as was the case in *Statler v.
United States*, 157 U.S. 277, 15 S. Ct. 616, 39 L. Ed. 700
(1895). In *Statler*, the jury added to its verdict by summa-
rizing the charge of which it found the defendant guilty.
This summary omitted the essential element of intent. *Id.*
at 277-78, 280. The defendant argued the jury had, there-
fore, found him not guilty of the crime. *Id.* at 278. The court
concluded the jury's superfluous summary did not invali-
date its guilty verdict. *Id.* at 279-80.

¶41 By contrast, the jurors in Eggleston's second trial
merely answered a special verdict form, despite instruc-
tions to leave it blank if they found him not guilty of first
degree murder. The jury's conclusion that the State failed to
prove Eggleston knew his victim was a police officer did not
contradict its verdicts of not guilty of first degree murder
and guilty of second degree murder. Nor did the jury add
superfluous language to the verdict form, as it did in *Statler*.
While unnecessary, given the acquittal on first degree
murder, the jury's special verdict was both clear and con-
sistent with its overall decision. We should not disregard it.

¶42 But collateral estoppel requires more than a previ-
ous determination of an issue by a jury. *Dowling v. United
States*, 493 U.S. 342, 348, 110 S. Ct. 668, 107 L. Ed. 2d 708
(1990). The same issue must be an ultimate fact or issue in
the subsequent proceeding as well. *Id.* I agree with the
majority that Eggleston's knowledge was not an ultimate
fact or issue in this most recent third trial. *See id.* As the
majority points out, the third jury's guilty verdict on second
degree murder did not require the jury to decide whether

[10] Nor would I so sharply reprimand the jury for its error. It is hard enough to
serve on a jury in a murder case. We should not denigrate this jury's attempt to
give a careful and thorough verdict.

Eggleston knew his victim was a police officer. Majority at 74. Whether Eggleston knew the person storming into his home was a police officer was not an "ultimate fact" essential to the claim of second degree murder. *See Dowling*, 493 U.S. at 348.

¶43 I conclude Eggleston's third trial did not violate collateral estoppel, not because I disregard the second jury's special verdict, but because Eggleston's knowledge was not an ultimate issue in the third trial. With that reservation, I concur in the remainder of the majority's opinion.

J.M. JOHNSON, J., concurs with CHAMBERS, J.

[No. 79767-6.   En Banc.]
Argued February 12, 2008.     Decided July 10, 2008.