IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37008-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| COLBY D. VODDER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Colby Vodder appeals his conviction and sentence for

first degree felony murder, predicated on second degree kidnapping. We address some

issues but others are rendered moot by our resolution of the dispositive issue. We

conclude that the trial court erred by allowing the lead detective to testify that he believed

Vodder was guilty. Because this error is of constitutional magnitude and is not harmless

beyond a reasonable doubt, we reverse and remand for retrial.

We use our discretion to consider two important issues briefed by the parties that

will occur on remand. We conclude that collateral estoppel did not and will not prevent

the State from retrying Vodder for felony murder predicated on second degree

kidnapping.  We also conclude that if the State presents separate acts of kidnapping, as it did in the prior two trials, the trial court must give a unanimity instruction.

FACTS

Brett Snow went missing in late 2015.  The last activity on Snow's cell phone was a text message received from Karen Nelson at 4:31 a.m. on December 3, 2015.  Six minutes earlier that morning Snow had texted Nelson, which activated a cell tower in the vicinity of 7822 North Starr Road, Newman Lake, Washington.

Russell Joyce owned the property at 7822 North Starr Road, consisting of a house and a shop.  Joyce lived in the apartment above the shop, Cheryl Sutton and Ken Stone lived in the house, and Al Guajardo lived in the makeshift bedroom in a corner of the shop.

Sutton, Stone, and Guajardo sold drugs on the property.  Snow sold methamphetamine and heroin supplied by Sutton and Stone.  Vodder, who also sold drugs, would come to the property two or three times per week and purchase drugs from Sutton and Stone.

In early December, Snow went to visit his friend Joyce in Joyce's upstairs apartment.  According to Joyce, Sutton and Stone heard Snow's voice, ran upstairs and entered his apartment, bound Snow with a telephone cord, called Guajardo into his

apartment, directed Guajardo to hit Snow, and then the three took Snow downstairs to the shop.

Five days later, Joyce heard noises coming from the shop that sounded like a chain being pulled through something metallic attached to his wall. Joyce went downstairs and knocked on the shop door to find out what was happening. Guajardo and Vodder were in the shop. They did not open the door. Vodder claimed he had poached a deer. Sometime later, Guajardo threatened Joyce.

Sometime during those five days, Christopher Schoonover received a telephone call from Vodder's cell phone. It was Sutton. She asked Schoonover to do something that caused Schoonover to fear for Snow. Later, Vodder told Schoonover that Sutton had called him and he went to the Starr Road property. Vodder told Schoonover that he helped retrieve Snow and bring him back to the shop.

Vodder later told Schoonover what happened at the shop. Snow became "mouthy" and then Vodder and Sutton began slapping Snow. Report of Proceedings (RP) at 1411. Snow and Vodder then began using fists, and Snow was winning until Sutton grabbed a lawnmower blade and struck Snow on the head. Stone and Guajardo then entered the shop. Vodder told Schoonover that Sutton, Stone, and Guajardo then decided they would not take Snow to the hospital because he was critically injured. The three then dragged

3

Snow into Guajardo's bedroom where Guajardo either shot or stabbed Snow.  The three

then took the body into the shop, cut it into pieces, and put the pieces into buckets.

Vodder told Schoonover that he did not take part in the dismemberment or disposal of

Snow's body but he did witness it.

Months later, Vodder drove by the Starr Road property with a friend and said he

had once "taken care of somebody" at the property.  RP at 1474.

*First trial*

Vodder was arrested in late 2016.  By amended information, the State charged

Vodder with first degree felony murder (predicated on first or second degree kidnapping),

second degree felony murder (predicated on first or second degree kidnapping), and

conspiracy to commit first degree kidnapping.  The jury in the first trial determined that

Vodder was not guilty of conspiracy to commit first degree kidnapping, but it could not

reach a verdict on the charges of first degree and second degree felony murder.

*Second trial*

The State amended the charges to assert only one count—first degree felony

murder (predicated on second degree kidnapping).  During the second trial, the State

called the lead detective, Detective Lyle Johnston.  During cross-examination, defense

counsel asked, "Did you tell [Vodder's] mother that you didn't think he did it?"

4

RP at 1624. The State objected to the question as hearsay, but the court overruled the objection. The detective answered that he had not said anything like that to Vodder's mother. Defense counsel then asked, "You never had any sort of conversation where you said you felt like Mr. Vodder was in the wrong place at the wrong time and he wasn't culpable for Mr. Snow's disappearance or death?" RP at 1625. Again the State objected to the question as hearsay, but the trial court overruled it on the basis that the statement was an admission by a speaking agent. Through a series of questions and answers, the detective recounted the statements between him and Vodder's mother. The detective testified that he told Vodder's mother that he "thought that there were other people responsible in this."[1] RP at 1631.

During redirect, the following exchange occurred:

> [DEPUTY PROSECUTOR:] You were asked about a conversation you had with Mr. Vodder's mother.
> [DETECTIVE JOHNSTON:] Yes.
> [DEPUTY PROSECUTOR:] You had said that you believed—you arrested Mr. Vodder?
> [DETECTIVE JOHNSTON:] Yes.
> [DEPUTY PROSECUTOR:] Did you believe he was guilty of the crime?
> [DETECTIVE JOHNSTON:] Yes.
> [DEPUTY PROSECUTOR:] Did you believe others were also guilty of the crime?

---

[1] Neither party clarified this ambiguous statement. The statement could have meant "other people *than* Vodder" or "other people *besides* Vodder."

[DETECTIVE JOHNSTON:]  I did.

RP at 1653.

Vodder objected to these questions as calling for improper opinion evidence.  The trial court overruled his objection on the basis that his cross-examination had opened the door to the detective's opinion testimony.

After the parties presented their evidence, the trial court instructed the jury.  The instructions did not require the jury to unanimously agree on whether Vodder participated in the initial abduction or the later abduction.  The State argued that he participated in both.

The jury returned a verdict of guilty on the sole count of first degree felony murder (predicated on second degree kidnapping).  The trial court sentenced Vodder to 344 months of incarceration.  Vodder appealed to this court.

## ANALYSIS

Vodder raises several arguments.  The first issue we address is dispositive.

### IMPROPER OPINION TESTIMONY

Vodder argues the trial court erred by allowing Detective Johnston to testify that he thought Vodder was guilty of the crime.  The State does not dispute that such testimony typically is improper.

6

"No witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). This prohibition has roots in the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. Both constitutional provisions guarantee the right to trial by an impartial trier of fact. A witness's opinion on the guilt of the accused violates the jury trial right by improperly invading the ultimate question that is for the jury alone to decide. *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014); *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (plurality opinion). Here, the trial court allowed the lead detective to testify that he believed Vodder was guilty of the crime.

The parties disagree on whether defense counsel's cross-examination opened the door to the lead detective's opinion that Vodder was guilty. We first observe that whatever the detective told Vodder's mother might have been excludable under ER 403. The State, rather than raising an ER 403 objection, raised a hearsay objection. The trial court properly overruled this objection and allowed the State's speaking agent to answer the questions.

The detective testified that he told Vodder's mother that he "thought that there were other people responsible in this." RP at 1631. We note that defense counsel's

questions to the detective were limited to what he told Vodder's mother; defense counsel

never asked about the detective's unexpressed opinions.

On redirect, the deputy prosecutor went beyond what the detective told Vodder's

mother. He asked whether the detective *believed* Vodder was guilty of the crime. The

detective answered, "Yes." RP at 1653. Defense counsel objected, but the trial court

overruled the objection. This was error.

In *State v. Lang*, 12 Wn. App. 2d 481, 487, 458 P.3d 791 (2020), we explained:

> The open door doctrine is nothing more than a theory of expanded
> relevance. It applies when a defendant waives the benefit of an evidentiary
> or constitutional protection by broaching a topic that would ordinarily be off
> limits. Once a defendant opens the door to an otherwise prohibited topic,
> the State can introduce relevant responsive evidence. *Although the open
> door doctrine provides the State with a broader landscape of relevant
> evidence, it does not provide license to disregard constitutional and
> evidentiary limitations on the admission of evidence.*

(Emphasis added) (citations omitted).

Here, the open door doctrine allowed the State to question the lead detective about

his statements to Vodder's mother. The doctrine did not provide license to disregard

constitutional and evidentiary limitations by providing opinion evidence of guilt. Those

limitations were violated here. As for evidentiary limitations, the detective was not

qualified under ER 702 to testify whether a suspect is guilty. As for constitutional

8

limitations, improper opinion evidence of guilt violates the constitutional right of the accused to have the jury decide the critical facts. *Quaale*, 182 Wn.2d at 201-02.

The State argues that Vodder invited the error. We disagree. Vodder questioned the detective about what he told Vodder's mother. Vodder did not question the detective about his unstated opinions.

The State alternatively argues that the error was harmless. "Constitutional error is harmless only if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." *Id.* at 202. We must look at the "overall significance of the erroneously admitted or excluded evidence" and determine whether, in light of the trial record as a whole, the trial would have come out the same way. *State v. Romero-Ochoa*, 193 Wn.2d 341, 348, 440 P.3d 994 (2019), *cert. denied*, __ U.S. __, 141 S. Ct. 398, 208 L. Ed. 2d 110 (2020).

An opinion as to the defendant's guilt is especially prejudicial when it comes from a state official such as a police officer. *State v. Thompson*, 90 Wn. App. 41, 46, 950 P.2d 977 (1998). Here, the improper opinion came from the lead detective. So, the significance of the improper opinion evidence was especially prejudicial.

The State compares the facts here with the facts in *Romero-Ochoa*. But those facts are not comparable. In *Romero-Ochoa*, the defendant appealed from a rape conviction

9

because the trial court did not allow him to question the victim about her U visa application. 193 Wn.2d at 345-46. The court held the error was harmless in light of testimony from 19 different witnesses who all testified against the defendant, and the defendant presented no evidence supporting his argument that the two were simply having an affair. *Id.* at 346, 360-61. The court found the evidence overwhelmingly showed the case would have come out the same way. *Id.* at 363.

Here, the case against Vodder was thinner. The State's strongest evidence that Vodder was involved in the kidnapping and murder came from Schoonover's testimony. The only evidence that Vodder was involved in the first abduction of Snow from Joyce's apartment was that Vodder and Sutton texted and called each other in early December. He certainly was not present when Sutton, Stone, and Guajardo brought Snow to the shop. As for the second abduction, Schoonover testified that he could not say whether Snow willingly returned to the shop. The record does not contain overwhelming evidence to support second degree kidnapping, the predicate for the State's first degree felony murder charge.

Comparing the significance of the wrongly admitted opinion evidence with the overall evidence, we conclude the State has failed to establish that the error was harmless

10

beyond a reasonable doubt. We reverse Vodder's first degree felony murder conviction and remand for a new trial.

ISSUES LIKELY TO REOCCUR ON REMAND

In the interest of judicial economy, an appellate court may consider an issue that is likely to occur following remand if the parties have briefed and argued the issue in detail. *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 716, 911 P.2d 389 (1996). We address two additional issues that will arise on remand and have a substantial impact on the trial of the case.

### *Double jeopardy*

Vodder contends the State was collaterally estopped from bringing any felony murder charge against him predicated on trespass. He argues that because he was acquitted of conspiracy to commit first degree kidnapping, double jeopardy prevents him from being retried on any kidnapping-related charge. We disagree.

We review allegations of collateral estoppel de novo. *State v. Eggleston*, 164 Wn.2d 61, 70, 187 P.3d 233 (2008). The Fifth Amendment to the United States Constitution provides, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Washington similarly indicates, "No person shall . . . be twice put in jeopardy for the same offense . . . ." WASH. CONST. art. I, § 9. When it

11

comes to the collateral estoppel aspect of double jeopardy, a jury is precluded from reaching a directly contradictory conclusion from a prior jury. *Eggleston*, 164 Wn.2d at 74. Where a rational jury could have grounded its general verdict on an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel will not preclude its relitigation. *Id.* at 73.

In Washington, collateral estoppel applies in a criminal context only where four questions are answered affirmatively:

> "(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea of collateral estoppel is asserted a party or in privity with the party to the prior adjudication? (4) Will the application of the doctrine work an injustice on the party against whom the doctrine is to be applied?"

*Id.* at 72 (quoting *State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003)). Both parties agree that our focus must be on the first of these four elements.

In the first trial, the State brought three charges: First degree felony murder (predicated on first or second degree kidnapping), second degree felony murder (predicated on first or second degree kidnapping), and conspiracy to commit first degree kidnapping. In the second trial, the State brought only one charge: First degree felony murder (predicated on second degree kidnapping).

12

In the first trial, the court instructed the jury that a person commits the crime of conspiracy to commit first degree kidnapping when,

> with intent that conduct constituting the crime of first degree kidnapping be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.

Clerk's Papers (CP) at 286.

The State argues that collateral estoppel does not apply here because conspiracy requires proof that Sutton and Vodder agreed to kidnap Snow, while it did not need to prove an agreement in the second trial. This is a curious argument, given the evidence was fairly strong that Vodder received a call from Sutton asking him to help retrieve Snow, and he agreed to help retrieve Snow. We think the evidence of an agreement was strong if not disputed.

There is a more sound reason than offered by the State why collateral estoppel does not apply. In the first trial, the court instructed the jury that a person commits the crime of first degree kidnapping when "he or she intentionally abducts another person with intent to hold the person to inflict bodily injury on the person or to inflict extreme mental distress on that person." CP at 275. It also instructed the jury that a person commits the crime of second degree kidnapping when "he or she intentionally abducts another person." CP at 278.

Based on the three verdicts in the first trial, it is evident the jury determined that the State failed to prove first degree kidnapping but was hung on whether it had proved second degree kidnapping. In other words, the State failed to prove that Vodder intended for Snow to be injured after he assisted Sutton in retrieving Snow. This explains why the jury found Vodder not guilty of conspiracy to commit *first degree* kidnapping, but could not reach a decision on the other charges that involved first *or second degree* kidnapping.

A rational jury in the first trial could have grounded its verdict in the State's failure to prove first degree kidnapping beyond a reasonable doubt. In the second trial, the State argued that Vodder was guilty of first degree felony murder predicated on *second degree* kidnapping. The State was not precluded from arguing second degree kidnapping in the second trial, and it will not be precluded in the third trial.

### *Unanimous jury verdict*

Vodder contends his right to a unanimous jury verdict was violated. He argues the State relied on two separate instances of kidnapping to prove its case but did not give an instruction to the jury that it must be unanimous as to which instance of kidnapping Vodder was an accessory to—the initial kidnapping of Snow or the later recapturing of him. The State argues that the whole kidnapping was a course of conduct and thus no unanimity instruction was required. We disagree with the State.

14

Where the evidence indicated that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the charged crime. *State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991); *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

Because the failure to give a jury unanimity instruction is an error of constitutional magnitude, a defendant may raise the issue for the first time on appeal. *State v. Locke*, 175 Wn. App. 779, 802, 307 P.3d 771 (2013). Whether a unanimity instruction is required in a particular case is a question of law reviewed de novo. *State v. Linehan*, 147 Wn.2d 638, 643, 645, 56 P.3d 542 (2002).

Generally, kidnapping is a course of conduct crime that continues for as long as the victim's liberty is restrained. *State v. Classen*, 4 Wn. App. 2d 520, 532, 422 P.3d 489 (2018). "[K]idnapping involves the element of unlawful detention and is continuously committed as long as the unlawful detention of the kidnapped person lasts." *Id.* at 533 (citing *State v. Dove*, 52 Wn. App. 81, 88, 757 P.2d 990 (1988)). However, where a

victim regains his liberty and is then recaptured, two separate acts of kidnapping occur. *Id.* at 534.

Here the State presented evidence of two separate acts of kidnapping. The first act was when Snow was initially bound and taken from Joyce's apartment to the shop. The second occurred after Snow purportedly escaped and was retrieved and returned to the shop. Evidence for Vodder's involvement in each of these acts was presented and argued by the State.

The State contends this was one continuous act and that even had Snow escaped from his initial capture, he had never regained his liberty because he knew that Sutton and others were pursuing him. This misunderstands the concept of regaining one's liberty. *Classen* is illustrative here. In *Classen*, the defendant had kidnapped his victims by forcing a mother and son to stay in the mother's car with the defendant and forcing her to drive him on the interstate. *Id.* at 526-27. At some point during the kidnapping, the car ran out of gas and the mother was able to escape the car. *Id.* at 527. The defendant immediately chased after her, but was unable to recapture her because of third party bystanders helping the mother. *Id.*

The court in *Classen* held that when the mother had escaped the car, she had regained her liberty and thus the defendant's chase of her constituted a separate act from

the initial kidnapping. *Id.* at 533-34. The court concluded that the defendant could be charged with both kidnapping and the later attempted kidnapping of the mother. *Id.*

The State's argument that Snow had not regained his liberty because he knew he was being pursued is mistaken when viewed in light of *Classen*. While Snow surely did know he was being pursued after escaping, so did the mother in *Classen*. That is not what determines someone regaining their liberty. The escape from restraint is all that is required.

The State contends that during closing it told the jury that this was one continuous course of conduct and that even had Snow escaped, it was all part of one act. It argues it only briefly focused on the recapture and mainly argued about the "continuous conduct." This argument is unpersuasive. As noted above, the State presented evidence of two separate acts of kidnapping. Misinforming the jury that the kidnapping was one continuous course of conduct does not make it so.

We conclude that the State must choose which separate kidnapping act it is relying on at retrial and, if it chooses to rely on both, the trial court must give the jury a proper unanimity instruction.

No. 37008-9-III
*State v. Vodder*

Reversed and remanded for retrial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, A.C.J.                                              Fearing, J.